**In re ARLCO, INC. and HFO, Inc. f/k/a Arley Corporation and Home Fashions Outlet, Inc., respectively, Debtors.**

**Galey & Lord Inc., Plaintiff,**

**v.**

**Arley Corporation, Defendant.**

**Bankruptcy Nos. 97–B–43789, 97–B–43790(AJG). Adversary No. 97–8536.**

United States Bankruptcy Court, S.D. New York.

Sept. 21, 1999.

Kreindler & Relkin, P.C., New York City, Bruce S. Nathan, David P. Lennon, of counsel, for Galey & Lord, Inc.

Angel & Frankel, P.C., New York City, John H. Drucker, Laurence May, Carlos J. Cuevas, of counsel, for the debtor.

*MEMORANDUM DECISION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

ARTHUR J. GONZALEZ, Bankruptcy Judge.

On June 6, 1997, Arley Corporation ("Arley") and Home Fashions Outlet, Inc. ("Home Fashions" and together with Arley, the "Debtors") each filed a petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Arley was engaged in the business of manufacturing, importing, and wholesaling home furnishings, window coverings, bed-coverings, and linens which were sold to retailers, one of which was Home Fashions, Arley's wholly-owned subsidiary. Home Fashions operated retail outlet stores in Massachusetts and California. In addition, the Debtors maintained business and corporate offices, a showroom, and a design facility in New York. They also maintained business offices in Massachusetts and manufacturing facilities in Massachusetts, North Carolina, South Carolina, and California.

On September 15, 1997, pursuant to 11 U.S.C. § 363, the Court approved an asset purchase agreement for the sale of substantially all of the Debtors' assets as a going concern. The asset purchase agreement included a requirement that the Debtors change their corporate names contemporaneously with the closing of the sale transaction. Thus, Arley changed its name to Arlco, Inc. and Home Fashions changed its name to HFO, Inc. On August 6, 1998, the Debtors chapter 11 cases were converted to chapter 7. Thereafter, Robert Fisher, Esq. was appointed as chapter 7 trustee (the "Trustee").

Galey & Lord, Inc. ("Galey") is a fabric manufacturer. Prior to the filing of the Debtors' petitions, Galey, in its ordinary course of business, sold textile goods on credit to Arley. On May 16, 1997, Galey sent a letter to Arley by fax, overnight courier, and certified mail (the "May 16th Letter") demanding that Arley return the merchandise it "received during the applicable periods referred to in [§ 2–702 of the Uniform Commercial Code]" and notifying Arley that "all goods subject to [Galey's] right of reclamation should be protected and segregated by [Arley] and are not to be used for any purpose whatsoever." Subsequently, on May 21, 1997, Galey sent the Debtor an additional notice detailing each invoice issued to Arley within the 10–day period prior to May 16, 1997 for the goods allegedly subject to reclamation. Since early 1995, CIT Group/Business Credit Inc. ("CIT") has held a perfected security interest in substantially all Arley's assets, including accounts receivable and inventory.

On June 9, 1997, prior to the sale of the Debtors' assets, Galey commenced an adversary proceeding against Arley seeking reclamation of the textile goods referred to in the May 16th Letter. On June 11, 1997 Galey filed an Amended Complaint. Currently before the Court are motions for summary judgment filed by Galey and by the Trustee, respectively.

In its summary judgment motion, Galey maintains that it has complied with all the statutory requirements for establishing a valid claim for reclamation. The Trustee refutes Galey's contention and opposes entry of summary judgment in favor of Galey. Rather, the Trustee maintains that his arguments support entry of summary judgment in Arley's favor. The three principal reasons advanced by the Trustee in opposition to Galey's motion and in support of his own motion are that 1) the reclamation notice was legally deficient, 2) Galey failed to prove what goods Arley

still had on hand when Galey made its demand, and 3) Galey's right to reclamation is subject to CIT's perfected security interest. In addition, Arley contends that there are factual disputes that preclude entry of summary judgment in favor of Galey.

## DISCUSSION

■ The purpose of 11 U.S.C. § 546(c) [1] is to recognize any right to reclamation that a seller may have under applicable nonbankruptcy law. *In re Victory Markets Inc.*, 212 B.R. 738, 741 (Bankr.N.D.N.Y.1997). Section 546(c) does not create a new, independent right to reclamation but merely affords the seller an opportunity, with certain limitations, to avail itself of any reclamation right it may have under nonbankruptcy law. *Id.; Toshiba America, Inc. v. Video King of Illinois, Inc. (In re Video King of Illinois, Inc.),* 100 B.R. 1008, 1013 (Bankr.N.D.Ill. 1989). Pursuant to § 546(c), a seller may reclaim goods it has sold to an insolvent debtor if it establishes:

(1) that it has a statutory or common law right to reclaim the goods;

(2) that the goods were sold in the ordinary course of the seller's business;

(3) that the debtor was insolvent at the time the goods were received; and

(4) that it made a written demand for reclamation within the statutory time limit after the debtor received the goods.

*Victory Markets,* 212 B.R. at 741. The reclaiming seller has the burden of establishing each element of § 546(c) by a preponderance of the evidence. *Victory Mar-*

*kets,* 212 B.R. at 741. Thus, in addition to establishing the requirements necessary to obtain reclamation under common law or any statutory right for such relief, the seller seeking reclamation under § 546(c) must prove that it sold the goods in the ordinary course of business and it made a written demand within ten days of the receipt of the goods. *Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.),* 964 F.2d 842, 845 (8th Cir.1992). Moreover, Bankruptcy Code § 546(c) limits the definition of insolvency to that found in 11 U.S.C. § 101(31). *Video King,* 100 B.R. at 1013.

■ In addition, to be subject to reclamation, goods must be identifiable and cannot have been processed into other products. *Party Packing Corporation v. Rosenberg (In re Landy Beef Co., Inc.),* 30 B.R. 19, 21 (Bankr.D.Mass.1983). It has also been noted that "an implicit requirement of a § 546(c) reclamation claim is that the debtor must possess the goods when the reclamation demand is made." *Flav-O-Rich, Inc. v. Rawson Food Service, Inc. (In re Rawson Food Service, Inc.),* 846 F.2d 1343, 1344 (11th Cir.1988). *See In re Adventist Living Centers, Inc.,* 52 F.3d 159, 163 (7th Cir.1995); *Eighty-Eight Oil Co. v. Charter Crude Oil Co. (In re Charter Co.),* 54 B.R. 91, 92 (Bankr. M.D.Fla.1985). However, it is not clear "whether possession is an element under § 546(c) of the Bankruptcy Code or in establishing an independent right of reclamation under nonbankruptcy law to be recognized under § 546(c)." *Video King,*

---

1. 11 U.S.C. § 546(c) provides:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.

100 B.R. at 1014. Logic dictates that, if not possession, the debtor should at least have control over the goods if it is to be required to return them. For the same reason, if the goods are not identifiable, the debtor could not identify or extract the goods to return them to the reclaiming seller. The issue concerning control of the goods or the identifiable nature of the goods would be relevant whether or not the reclaiming seller is seeking the goods in a bankruptcy context. Thus, it appears that these elements are requirements under the "independent right of reclamation under nonbankruptcy law." *Video King,* 100 B.R. at 1014.

 Section 546(c) also affords the bankruptcy court broad discretion to substitute an administrative claim or lien in place of the right to reclaim. *Pester,* 964 F.2d at 845. This discretion gives the court needed flexibility and permits it to recognize the reclaiming creditor's rights while allowing the debtor the opportunity to retain the goods in order to facilitate the reorganization effort. *Id.*

 Uniform Commercial Code ("U.C.C.") § 2–702,[2] as enacted in various jurisdictions, ordinarily forms the statutory right upon which sellers base their reclamation demand. Thus, as previously noted, the reclaiming seller must establish the requirements of the relevant U.C.C. section[3] and remains subject to its limitations. Pursuant to U.C.C. § 2–702(3),[4] the seller's right to reclamation is "subject to" the rights of a good faith purchaser from the buyer. *Pester,* 964 F.2d at 844; *In re Leeds Building Products, Inc.,* 141 B.R. 265, 268 (Bankr.N.D.Ga.1992); *Video King,* 100 B.R. at 1016; *Sandoz Pharmaceuticals Corp. v. Blinn Wholesale Drug Co., Inc. (In re Blinn Wholesale Drug Co., Inc.),* 164 B.R. 440, 443 (Bankr.E.D.N.Y. 1994); *Victory Markets,* 212 B.R. at 742. That the right of a reclaiming creditor is subordinate to that of a good faith purchaser does not automatically extinguish the reclamation right. *Pester,* 964 F.2d at 846. Rather, the reclaiming creditor is "relegated to some less commanding station." *Leeds,* 141 B.R. at 268.

 Most courts have treated "a holder of a prior perfected, floating lien on inventory . . . as a good faith purchaser with rights superior to those of a reclaiming seller." *See Victory Markets,* 212 B.R. at 742 (*citing, Stowers v. Mahon (In re Samuels & Co.),* 526 F.2d 1238, 1242–43 (5th Cir.1976)); *In re Child World, Inc.,* 145 B.R. 5, 7 (Bankr.S.D.N.Y.1992); *Blinn Wholesale Drug,* 164 B.R. at 443; *Isaly Klondike Co. v. Sunstate Dairy & Food Products Co. (In re Sunstate Dairy & Food Products Co.),* 145 B.R. 341, 344 (Bankr.M.D.Fla.1992); *Leeds,* 141 B.R. at 268. *See also House of Stainless, Inc. v. Marshall & Ilsley Bank,* 75 Wis.2d 264,

---

2. UCC § 2–702 entitled Seller's Remedies on Discovery of Buyer's Insolvency provides in relevant part:

 . . .

 (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt. . . . Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

 (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403). Successful reclamation of goods excludes all other remedies with respect to them.

3. The parties note that North Carolina, Massachusetts, California, and New York—all the states with which the Debtors are involved that may have relevance to the issues before this Court—have adopted a Uniform Commercial Code substantially similar to the Model Uniform Commercial Code as adopted by the American Law Institute and by the National Conference of Commissioners on Uniform State Law. Further, the parties acknowledge that these states interpret the applicable sections in a similar manner.

4. For convenience, references to U.C.C. sections will not cite any particular state numbering system but, rather, reference the equivalent Model Uniform Commercial Code section number.

273, 249 N.W.2d 561, 567 (1977) (*citing, In re Hayward Woolen Co.*, 3 U.C.C.Rep. Serv. 1107, 1111–12 (Bankr.D.Mass.1967); *First–Citizens Bank & Trust Co. v. Academic Archives*, 10 N.C.App. 619, 624, 179 S.E.2d 850, 853 (1971); *Guy Martin Buick, Inc. v. Colorado Springs Nat. Bank*, 184 Colo. 166, 519 P.2d 354, 358 (1974)). *But see In re American Food Purveyors, Inc.*, 17 U.C.C.Rep.Serv. (CBC) 436 (Bankr.N.D.Ga.1974).

Galey argues that the courts that have found parties with secured interests in inventory to be good faith purchasers have merely referred to the definitions of good faith purchaser under the U.C.C. § 1–201(19), (32), and (33). Galey contends that because U.C.C. § 2–702(3) refers to the reclaiming seller's interest as being subject to the interest of a good faith purchaser "under this Article," only parties acquiring their interests under Article 2 of the U.C.C. are the type of good faith purchasers encompassed within the protection of U.C.C. § 2–702(3). Therefore, Galey contends that parties acquiring security interests under Article 9 of the U.C.C. are not included. Galey also points to the Seventh Circuit decision in *In re Reliable Drug Stores, Inc.*, where the court, in *dicta*, noted that there was room for debate as to whether a party with a security interest qualified as a good faith purchaser. 70 F.3d 948, 949 (7th Cir.1995).

U.C.C. § 2–702(3) provides that the right to reclamation is "subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403)." However, neither U.C.C. § 2–403 nor any other section in Article 2 defines "good faith purchaser." U.C.C. § 2–403 is entitled "Power to Transfer; Good Faith Purchase of Goods; Entrusting" and concerns the power certain parties have to transfer goods and the rights of certain parties who acquire those goods. While the section makes reference to these various parties, it does not define who they are. In fact, the only definition provided in U.C.C. § 2–403 is of the term

"entrusting." To derive the definition of "good faith purchaser," reference must be made to several subsections of U.C.C. § 1–201, which provides general definitions applicable to the entire U.C.C. First, "good faith" is defined as "honesty in fact in the conduct or transaction concerned." U.C.C. § 1–201(19). This is further refined when dealing with a merchant because U.C.C. § 2–103(1)(b) requires the "observance of reasonable commercial standards of fair dealing in the trade." A "purchaser" is defined as one "who takes by purchase," U.C.C. § 1–201(33), and "purchase" is defined to include "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property." U.C.C. § 1–201(32). Thus, the definition of purchaser is broad enough to include an Article 9 secured party, which then qualifies as a purchaser under U.C.C. § 2–403. *See Samuels & Co.*, 526 F.2d at 1242. The reference in U.C.C. § 2–702(3) to "the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403)" does not mean to imply that reclaiming sellers are only subject to interests acquired under Article 2. Rather, the focus is on *the rights* of the listed parties under Article 2. Under this reading, the purpose for the reference to U.C.C. § 2–403 is clear. U.C.C. § 2–403 provides, in part, that "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value." As included in the U.C.C. § 1–201(44) definition, "value" is considered to be given for rights if they are acquired "as security for or in total or partial satisfaction of a pre-existing claim." Thus, *under Article 2*—specifically U.C.C. § 2–403—the party who qualifies as a "good faith purchaser" as defined under U.C.C. § 1–201 and gives "value," as defined in U.C.C. § 1–201(44), acquires greater *rights* than the party transferring the goods to it had. Therefore, U.C.C. § 2–403 gives a transferor, even one who has acquired goods wrongfully, the power to transfer the goods "to a Code-defined

'good faith purchaser.'" *Samuels & Co.,* 526 F.2d at 1242. Thus, in the instant case, if CIT qualifies as a good faith purchaser pursuant to U.C.C. § 1–201 and gave value pursuant to U.C.C. § 1–201(44), then pursuant to U.C.C. § 2–403, even if Arley had voidable title to the goods, it could transfer good title under Article 2 to CIT. Further, if CIT obtained the goods in this manner, the demand of a reclaiming seller is subject to CIT's interest. U.C.C. § 2–702(3).

Galey cites to *American Food Purveyors, Inc.,* 17 U.C.C.Rep.Serv. at 441, which found that only Article 2 "purchasers" were meant to be protected by the Georgia Code equivalent of U.C.C. § 2–702(3), and that the section was not "designed to protect Article 9 secured creditors." The court, however, did note that it was aware that "the definition of a purchaser is broad enough to include an Article 9 secured creditor." *Id.* The *American Food Purveyors* court may also have been influenced by its perception that because of the buyer's fraud, it essentially held the goods in trust for a reclaiming seller during the relevant reclamation period. *Id.* at 443. However, nothing in U.C.C. § 2–702 references the funds being held in trust for the reclaiming seller.

Moreover, the *American Food Purveyors* court adopted the reasoning set out in *Johnston & Murphy Shoes, Inc. v. Meinhard Commercial Corp. (In re Mel Golde Shoes, Inc.),* 403 F.2d 658, 659–60 (6th Cir.1968). However, the dispute in the *Mel Golde* court involved the relative priority between the claim of a reclaiming seller and that of an attachment lien creditor.[5] In analyzing the relative rights of these parties, the *Mel Golde* court first reviewed the relevant U.C.C. section of the Kentucky statute and noted that U.C.C. § 2–702(3) refers one to U.C.C. § 2403 to determine the rights of the various listed parties, including a lien creditor. Upon analyzing U.C.C. § 2–403, the *Mel Golde* court concluded that the section provided "no help to a solution of the problem" before it. *Id.* at 659. This was because the only reference to a lien creditor in U.C.C. § 2–403 was in subsection (4) which provides:

> The rights of other purchasers of goods and of lien creditors are governed by the Articles on Secured Transactions (Article 9), Bulk Transfers (Article 6) and Documents of Title (Article 7).

Thus, U.C.C. § 2–403 referred one to Article 9 to consider the rights of lien creditors. Upon reviewing Article 9, the *Mel Golde* court concluded that it shed no "light upon the 'rights' of a 'lien creditor' vis-a-vis the right of reclamation of a defrauded seller under [U.C.C. § 2–702(2).]" Inasmuch as the *Mel Golde* court determined that Uniform Commercial Code included no provision defining the relative priorities of the lien creditor against the reclaiming seller, the court turned to the "relevant common law of Kentucky for the needed answer." *Mel Golde,* 403 F.2d at 660. However, conducting the same type of statutory analysis with respect to a good faith purchaser leads to a different result. As previously discussed, subsection (1) of U.C.C. § 2–403 specifically addresses the rights of a good faith purchaser for value. As a purchaser of goods, it "acquires all title which [its] transferor had or had power to transfer." Further, "[a] person with voidable title has power to transfer a good title to a good faith purchaser for value." Indeed, U.C.C. § 2–403(4), which was relied on by the *Mel Golde* court, further supports the view that U.C.C. § 2–403 specifically addresses the rights of a "good faith purchaser" because subsection (4) refers one to Article 9 if evaluating the rights of "other purchasers" in recognition of the fact that the rights of good faith purchasers for value have already been

---

**5.** Prior to the 1966 amendments to the Model Uniform Commercial Code, § 2–702(3) made the rights of a reclaiming seller subject not only to the rights of a buyer in ordinary course and the rights of a good faith purchaser but to the rights of a lien creditor as well. The 1966 amendments deleted the reference to a lien creditor.

addressed.[6] Therefore, by reviewing the definitions in U.C.C. § 1–201, as supplemented by those in § 2–103(1)(b), the court may determine whether the party qualifies as a good faith purchaser for value whose rights are delineated in U.C.C. § 2–403 and to whom a seller's right to reclaim is subject. Thus, as the statute specifically addresses the rights of the good faith purchaser, there is no need to turn to the common law.

Finally, with respect to the 1974 *American Food Purveyors* decision, the Trustee asserts that the same judge who rendered that decision was apparently subsequently influenced by the abundance of cases ruling the opposite way because in 1992 he issued the *Leeds* decision in which he found that "it is well established" that a party with a properly perfected security interest in a debtor's inventory is a good faith purchaser. *Leeds*, 141 B.R. at 268.

Galey also directs the Court's attention to *dicta* in *Reliable Drug*, 70 F.3d at 949–50, where the court noted that, although there was substantial case law holding that properly perfected lienholders were good faith purchasers, legal scholars debated the issue. The *Reliable Drug* court observed that one view was that "[U.C.C. § 2–702)(2) ] gives a vendor the rights of a purchase-money security holder for 10 days, and the purchase-money lender undoubtedly beats a creditor with a security interest in after-acquired inventory." *Id.* at 950 (*citing*, Thomas A. Jackson & Ellen Ash Peters, *Quest for Uncertainty: A Proposal for Flexible Resolution of Inherent Conflicts Between Article 2 and Article 9 of the Uniform Commercial Code*, 87 Yale L.J. 907, 965–70 (1977–78)). The law review article is premised on the view that a party with a security interest should only be considered a good faith purchaser for value if it has suffered detrimental reliance by extending new value. The authors of the article acknowledge that a prior secured lender with an after-acquired property interest "meets the apparently literal requirements of a good faith purchaser for value." 87 Yale L.J. at 965. Nevertheless, they argue that the "open-ended" language of U.C.C. § 2–403, a comment to the section, and "the pervasive weighing of equities in Article 2" should "justify relying on [a] more flexible approach." 87 Yale L.J. at 966, 968.

However, if the language of a statute is plain, the court's role "is to enforce it according to its terms." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The Uniform Commercial Code includes "value" as being given for goods if they are acquired "as security for or in total or partial satisfaction of a pre-existing claim." U.C.C. § 1–201(44). The state legislature is the appropriate forum to address the issue of whether or not the statute should be amended to allow a reclaiming seller priority against a prior secured lender with an after-acquired property interest who has not advanced new funding. However, this Court is required to interpret the statute as written and, based on our earlier analysis of the relevant sections of the Uniform Commercial Code as currently drafted, a creditor with a security interest in after-acquired property who acted in good faith and for value,

---

6. The Editorial Board Note on the 1966 amendment indicated that the reason for deleting the reference to lien creditor in § 2–702(3) was because the cross-reference to § 2–403 was confusing inasmuch as "the only reference to 'rights of a lien creditor' found in Section 2–403 is a further cross-reference to Articles 6, 7 and 9, and the relevance of those Articles is not apparent." Unif. Commercial Code § 2–702, 1B U.L.A. 218 (1989). New York, California, and North Carolina also have deleted the reference to "lien creditor" in their equivalent sections to U.C.C. § 2–702. Massachusetts has not deleted the reference to lien creditor; however, this does not impact on this Court's reasoning as applied to a party that qualifies under the definition of a good faith purchaser. *See House of Stainless, Inc. v. Marshall & Ilsley Bank*, 75 Wis.2d 264, 274, 249 N.W.2d 561, 566 (1977) (finding that the deletion of 'lien creditor' from U.C.C. § 2–702 was not intended to, and did not, result in a changed definition of good faith purchaser).

which includes acquiring rights "as security for or in total or partial satisfaction of a pre-existing claim," U.C.C. § 1–201(44), is a good faith purchaser to whose claim that of a reclaiming seller is subject.

■ The Court now turns to whether CIT acted in good faith. The U.C.C. definition of good faith is "honesty in fact," U.C.C. § 1–201(19), which "for Article Two purposes, is 'expressly defined as ... reasonable commercial standards of fair dealing.'" *Samuels & Co.*, 526 F.2d 1238 (5th Cir.1976) (*citing*, U.C.C. §§ 1–201, Comment 19; 2–103(a)(2)).

Galey argues that a determination as to CIT's good faith cannot be made on summary judgment because there is a factual issue as to CIT's good faith. However, Galey has not challenged the validity of the lien nor has it asserted that there was any misconduct by CIT. Neither has it alleged that CIT acted in bad faith in its dealings with Arley. Rather, Galey argues that CIT was aware that Arley was having financial problems and stopped advancing funds to Arley without informing Galey of its decision. Therefore it appears that Galey's argument is that Arley was aware that other creditors would be impacted by its decision to stop funding Arley.

■ However, the secured creditor with a floating lien remains a good faith purchaser even if it terminates funding with knowledge that sums are owed to third parties, as long as the decision concerning the funding was commercially reasonable. *Samuels*, 526 F.2d at 1244. There is no allegation that the contract obligated CIT to advance any additional funds. The "honesty in fact" element does not require a secured creditor to continue to fund a business with enormous debt and continuous losses. *Id.*; *Mitsubishi Consumer Electronics America, Inc. v. Steinberg's, Inc. (In re Steinberg's, Inc.)*, 226 B.R. 8, 11 (Bankr.S.D.Ohio 1998). Rather, a decision to stop funding such an enterprise is "clearly reasonable." *Samuels*, 526 F.2d at 1244. An entity that advances

funds secured by a valid lien on all the borrower's assets is a good faith purchaser absent a showing of misconduct by the secured creditor. *Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.)*, 62 B.R. 315, 320 (Bankr.E.D.N.C.1986). The burden is on the reclaiming seller to show misconduct by the secured creditor. *FCX, Inc.*, 62 B.R. at 322. Some courts have framed the issue as an absence of bad faith. *Victory Markets*, 212 B.R. at 742 (citing cases). Others as the secured creditor's lack of good faith. *Steinberg's Inc.*, 226 B.R. at 11 (citing cases). Under any formulation, the reclaiming seller bears the burden of proof under § 546(c). *Id.; Victory Markets*, 212 B.R. at 741.

■ Fed.R.Civ.P. 56(c) incorporated into bankruptcy practice by Fed. R.Bankr.P. 7056 provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c) specifies that to preclude summary judgment, the fact in dispute must be material. Substantive law determines what facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If a fact is material, it is then necessary to see if the dispute about that material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. 2505. If the fact may be reasonably resolved in favor of either party, then there is a genuine factual issue that may only be resolved by the trier of facts and summary judgment will be denied. *Id.* at 250, 106 S.Ct. 2505. If, however, the evidence "is so one-sided that one party must prevail as a matter of law," then summary judgment will be granted. *Id.* at 252, 106 S.Ct. 2505. To preclude summary judgment, "the reclaiming seller must show some basis upon which to question the

secured creditor's good faith." *Steinberg's Inc.*, 226 B.R. at 12. A speculative assertion is not sufficient to create the fair doubt required to show that an issue is genuine. *FCX, Inc.*, 62 B.R. at 322. On considering a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

Galey's conclusory assertions concerning the absence of good faith by CIT are not sufficient to create the fair doubt required to show that the issue is genuine. Galey makes no allegation of misconduct by CIT in its negotiations with Arley or in its compliance with the terms of the financing agreement with Arley. CIT has not set forth any basis upon which to question CIT's good faith. Thus, there is no genuine issue of material fact concerning whether CIT acted in good faith. Moreover, there is no factual dispute on the issue of whether CIT gave value and qualifies as a good faith purchaser for value, pursuant to the Code's definitions of the various terms. Therefore, the Court grants summary judgment on the issue and finds that CIT qualifies as a good faith purchaser for value.

As previously noted, while a seller's right to reclamation is subject to the rights of a good faith purchaser, the reclamation right is not automatically extinguished. Relying on this principle, Galey argues that, pursuant to § 546, it is entitled to either an administrative claim or lien in lieu of its right to reclamation. Galey maintains that if it is denied this relief, its claim effectively is extinguished by the presence of a good faith purchaser. Further. Galey contends that because there will be surplus collateral once CIT has been paid in full, that collateral should be used to pay Galey's reclamation claim and it should get its administrative claim or lien on that surplus.

The Trustee counters that it is not arguing that a reclaiming seller's claim is extinguished. Rather, the Trustee argues that when the goods subject to a reclamation demand are liquidated and the proceeds are used to pay the secured creditor's claim, the reclaiming seller's subordinated right is rendered valueless. The Trustee maintains that once the secured creditor is paid in full, the reclaiming seller is only entitled to reclamation when the surplus collateral remaining consists of the very goods sold by the reclaiming seller or the traceable proceeds from those goods.

 Courts differ on the treatment to be afforded reclaiming sellers subject to the superior rights of good faith purchasers. Some courts have awarded a reclaiming seller, who otherwise meets the criteria to qualify as a reclaiming seller but is subject to a superior claim, an administrative claim or replacement lien for the full amount of the goods sought to be reclaimed. *Sunstate Dairy*, 145 B.R. at 345–46; *In re Diversified Food Service Distributors, Inc.*, 130 B.R. 427, 430 (Bankr. S.D.N.Y.1991). However, the majority view appears to be some method of assuring that the reclaiming seller only receive what it would have received outside of the bankruptcy context after the superior claim was satisfied. *Pester*, 964 F.2d at 847; *Leeds*, 141 B.R. at 269; *Blinn*, 164 B.R. at 448; *Victory Markets*, 212 B.R. at 744. Thus, it is only when the reclaiming seller's goods or traceable proceeds from those goods are in excess of the value of the superior claimant's claim that the reclaiming seller will be allowed either to reclaim the goods or receive an administrative claim or lien in an amount equal to the goods that remain after the superior claim has been paid. *Victory Markets*, 212 B.R. at 744 (*citing Pester* 964 F.2d at 847); *United States v. Westside Bank*, 732 F.2d 1258, 1263 (5th Cir.1984). Allowing the reclaiming seller to recover only that to which it would be entitled absent the bankruptcy is in keeping with the purpose § 546(c) which is to preserve any common law or statutory rights to reclamation, not to enhance those rights. *Victory Markets*, 212 B.R. at 741 (*citing,* H.R. No. 595, 95th Cong., 1st Sess. 371–372 (1978), *reprinted*

*in* 1978 U.S.C.C.A.N. 5963, 6327–28); *Video King,* 100 B.R. at 1016–17; *Leeds,* 141 B.R. at 269. It therefore follows that any administrative claim or lien substituted for the right to reclamation pursuant to § 546(c) should be "allowed only to the extent of the value of the lost right of reclamation." *Video King,* 100 B.R. at 1016. If the right to reclamation would be worthless absent the bankruptcy filing, it is also worthless in bankruptcy. *Leeds,* 141 B.R. at 269. Indeed, granting an administrative claim or lien when the secured creditors have paid their claims out of the goods to be reclaimed "would afford the reclamation seller something it does not have under the UCC—a priority interest in the buyer's assets other than the goods to be reclaimed." *Pester,* 964 F.2d at 847.

█ Thus, while the reclaiming seller's claim is not automatically extinguished, the reclaiming seller is also not automatically granted an administrative claim or lien in the full amount sought when it is subject to the rights of the good faith purchaser. *Victory Markets,* 212 B.R. at 743. Rather, the reclaiming seller's right to reclaim depends on the value of the excess goods remaining once the secured creditor's claim is paid or released. *Id.*

█ As the bankruptcy filing does not enhance the reclaiming seller's rights, the Court should determine what would have happened to the reclaiming seller's claim in a nonbankruptcy context. The parties concede that under state law the secured creditor would have the option of proceeding against any of its collateral.[7] Therefore, the secured creditor may choose to foreclose on the goods sold by the reclaiming seller if these goods can be readily liquidated. When the secured claim, or a portion of it, is paid out of the goods sought to be reclaimed, the right to reclaim is rendered valueless. *Pester,* 964 F.2d at 847. Thus, "in the non-bankruptcy context, the secured creditor's decision

with respect to its security interest in the goods will determine the value of the seller's right to reclaim." *Pester,* 964 F.2d at 847. Here, following the Debtors' filing, CIT decided not to seek relief from the Court to pursue those remedies available to it to secure the immediate liquidation of all the Debtors' assets. Rather, it supported the Debtors' efforts to sell its inventory including any Galey goods in the ordinary course of its business. As a result, all of the goods which Galey sought to reclaim were sold and the proceeds used to pay CIT. Moreover, even after CIT received payment from the sale of the goods, there was still a balance due it. Thus, Galey's reclamation claim was rendered valueless.

Galey concedes that CIT's security interest is of a greater value than the value of the goods upon which Galey bases its reclamation claim. Nevertheless, inasmuch as it now appears that CIT's security interest will ultimately be satisfied through the continued liquidation of its remaining collateral, Galey argues that the Court should use its equitable power and afford it relief based upon a marshaling theory. While marshaling is ordinarily applied to competing lienholder claims, Galey maintains that marshaling is an appropriate remedy in this case because reclamation claimants have priority over general unsecured creditors and their claims are similar to liens.

The Trustee argues that Galey is not a lienholder and therefore marshaling does not apply. Moreover, the Trustee notes that marshaling is not appropriate because CIT, the entity to be impacted, is not a party to this proceeding and because marshaling would have resulted in delay, added · cost, or inconvenience to CIT. The Trustee also contends that affording Galey a priority over general unsecured creditors would result in this Court creating a new

---

**7.** CIT's financing agreement with Arley specifically allowed CIT to proceed against the collateral in any order.

class of priority creditors not provided for in the Bankruptcy Code. In fact, the Trustee argues that creating such class would run counter to the bankruptcy goal of providing equal treatment to similarly situated creditors and also counter to the practice by courts of strictly construing priorities. Finally, the Trustee argues that the result in this case is neither unfair nor harsh because the seller knew it sold its goods on an unsecured basis subject to the rights of CIT. In addition, the Trustee notes that Galey had various options open to protect its interest, including its ability to sell the goods subject to a purchase money security interest.

The equitable principle of marshaling of assets applies when a senior secured creditor can collect on its debt against more than one property or fund held by the debtor but a junior secured creditor can only proceed against one of those sources. *Chittenden Trust Co. v. Sebert Lumber Co. (In re Vermont Toy Works, Inc.)*, 135 B.R. 762, 767 (D.Vt. 1991). The principle benefits the junior secured creditor by requiring the senior secured creditor to first attempt to collect amounts owed it from the property or fund in which the junior secured creditor has no interest, thereby producing a greater possibility that there will be remaining value in the only fund from which the junior secured creditor can be paid to allow for a payment to it. *Id.* To apply marshaling, three elements must be established by clear and convincing evidence (1) the existence of two secured creditors with a common debtor, (2) the existence of two funds belonging to the debtor, and (3) the right of the senior secured creditor to receive payment from more than one fund while the junior secured creditor can only resort to one fund. *Vermont Toy Works*, 135 B.R. at 767. These three requirements have been strictly construed in the bankruptcy context. *Wurst v. City of New York (In re Packard Properties, Ltd.)*, 112 B.R. 154, 158 (Bankr.N.D.Tex.1990). "An unsecured creditor has no standing to in-

voke the doctrine." *Herkimer County Trust Co. v. Swimelar (In re Prichard)*, 170 B.R. 41, 45 (Bankr.N.D.N.Y.1994). Moreover, marshaling is not applied if either a senior secured creditor or other parties are prejudiced. *Vermont Toy Works*, 135 B.R. at 767. Thus, it is not applied when the senior secured creditor would be delayed or inconvenienced in the collection of the debt owed it. *Prichard*, 170 B.R. at 45. A secured creditor may properly proceed first to collect against "readily available collateral." *Vermont Toy Works*, 135 B.R. at 770. The senior secured creditor will not be required to proceed first against a fund that requires more rigorous procedures to collect upon if it has a fund "more directly available" to it that can be "easily reduced to money." *Prichard*, 170 B.R. at 45.

As a threshold matter, marshaling is not applicable in this case because the first requirement for its application is not met in that Galey is not a secured creditor. Although Galey argues that its claim has a higher priority than general unsecured claims and that its claim is akin to a secured claim, Galey, nevertheless, does not have a secured claim. *See Mel Golde*, 403 F.2d at 659 (finding that a right of reclamation is not a 'security interest' in the goods sold). *Cf. Packard Properties*, 112 B.R. at 158 (finding that a claimant with a prioritized administrative claim is not a secured creditor in the traditional sense). Further, with respect to Galey's assertion that a reclaiming creditor's rights are superior to those of a general unsecured creditor, the Court notes that the reclaiming creditor's claim is only superior to that of an unsecured creditor to the extent its reclamation claim is found to have value, however, with respect to that portion of the reclaiming creditor's claim in excess of that value, the reclaiming seller is an unsecured creditor.

More importantly, in the context of reclamation under § 2–702(3) once an entity is characterized as a good faith purchaser, the remedies and defenses avail-

able against it are limited to whatever may be raised against a good faith purchaser. The equitable remedy of marshaling is not one such remedy. Thus, although under state law a junior secured creditor may seek to compel a senior secured creditor to marshal assets and may continue to pursue this remedy in the bankruptcy context, once an entity is characterized as a good faith purchaser for the purposes of U.C.C. § 2–702, a party seeking reclamation pursuant to that particular section may not compel the application of marshaling against the good faith purchaser. Otherwise, if the equitable remedy of marshaling could be applied against an entity that qualifies as a good faith purchaser because it is a secured lender, the result would be to create distinctions and classes of good faith purchasers and alter their rights depending upon the manner in which they acquired that status.[8]

Galey relies on *Westside*, 732 F.2d at 1258, to support its position that when there is an oversecured creditor, the reclaiming seller should receive second priority in the remaining proceeds once the secured creditor is paid in full. In *Westside*, the reclaiming seller's goods were 1,000 pieces of furniture that would remain identifiable throughout the entire process whether they were foreclosed upon or sold in the ordinary course of business. A foreclosure sale which included these items of furniture was held at which the reclaiming seller sought to protect its interest by purchasing 797 pieces of its goods. Although the reclaiming seller sought reclamation for the proceeds of the sale of all its goods, the court awarded it a reclamation claim limited to the proceeds of the sale of the 797 pieces of furniture which the reclaiming seller, itself, had purchased. These were the proceeds deemed traceable by the court. The value of the reclamation award was determined by the price paid for those goods at the foreclosure sale. As a result of that one foreclosure sale, the secured creditor was paid in full and although there were sufficient proceeds to pay the reclaiming seller for all its goods, as already noted, the court limited the reclaiming seller's recovery to those proceeds attributable to the goods that the reclaiming seller itself had purchased at the foreclosure sale.

In the case before this Court, CIT could have sought Court approval to foreclose on all its collateral, including the Galey goods, immediately.[9] However, CIT chose to consent to the Debtor's decision to continue in

**8.** Although it may be argued that the equities weigh in Galey's favor because CIT was in a better position than Galey to assess the Debtors' financial condition, that argument ignores CIT's status as good faith purchaser. To shift the balance in favor of Galey because of CIT's knowledge of the Debtor's financial condition would, in effect, hold CIT to a higher standard than is set forth by the plain language of the applicable sections of the U.C.C.

**9.** Inasmuch as the payment on the reclamation claim must derive from the goods sold by the reclaiming creditor, Galey's analysis requires the presence of two elements. First, the secured creditor must be oversecured and, second, marshaling must apply. Galey points to an offer of proof given at the hearing to approve the Debtors' financing in which it was represented that the secured lender was oversecured. As noted by the Trustee, a valuation made within the context of a § 363 financing hearing would not be binding at a later date for another purpose. 11 U.S.C. § 506(a); *See also* S.Rep. No. 989, 95th Cong., 2nd Sess. 68, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5854; 124 Cong.Rec. 32398 (1978) (Rep.Edwards); *id.* at 33997 (Rep.DeConcini) (1978). The purpose of the offer of proof was to support financing premised upon the going concern value of the Debtors. It was contemplated that its inventory would be sold and accounts receivable collected in the ordinary course of the Debtors' business. However, a valuation for the purposes of marshaling which was based on the result of an immediate liquidation of the Debtors' assets at a foreclosure proceeding would have significantly reduced the projected value. Indeed, if an immediate foreclosure would have yielded for CIT the same result projected in the offer of proof concerning a going concern, it likely would have moved to lift the stay and sought to liquidate the assets immediately rather than funding the continued operation of the Debtors' business.

business with the expectation that as a going concern the return on CIT's collateral would increase. Therefore, a determination as to whether any Galey goods, or traceable proceeds therefrom, would remain after CIT's claim was paid in full would have to await the disposition of CIT's collateral and the application of those proceeds to the CIT loan balance. It is clear that whatever Galey goods may have been present on the date of the demand—all of which goods were subject to CIT's rights—were sold or processed into finished products and sold. The proceeds from the sale of those goods were obtained either in the ordinary course of business or as part of the price received from the sale of the inventory and accounts receivable under the asset purchase agreement. In accordance with the financing order advanced by the Debtors and CIT, and approved by this Court, the proceeds received from the ordinary course sales were applied against CIT's secured claim. To continue funding the Debtors' operations until the going concern was sold, CIT re-loaned funds to the Debtors as a post-petition loan. When the assets were ultimately sold, the inventory and accounts receivable, not yet liquidated by the Debtors, were sold to the asset purchaser and the proceeds of that asset sale were used to pay down CIT's claim. Even after receipt of the payment of the proceeds from the asset sale—which meant that any remaining Galey goods had either been processed and sold or sold as inventory with the proceeds from all those goods applied to CIT's secured claim—there remained a balance due CIT. Thus, all of the traceable proceeds from any Galey goods were used to pay CIT.

■ Moreover, even if the result in *Westside* were considered some type of marshaling because the reclaiming seller's goods and other goods were pooled and foreclosed upon with the surplus from the entire sale used to pay the reclaiming seller, it appears that this was accomplished in a fairly short time in one foreclosure sale of all the goods. Therefore, even if some type of remedy similar to marshaling were appropriately applied to benefit a reclamation claimant competing with a secured creditor who has the rights of a "good faith purchaser," this Court finds that such remedy would not apply under the facts of this case. CIT had not yet been fully paid on its secured claim long after Galey's goods were disposed of and the proceeds from that disposition applied to CIT's secured claim. Thus, a marshaling type remedy could not have been imposed to force CIT to seek payment from other sources when a more readily available collateral source was at its disposal. Any remedy similar to marshaling would have inconvenienced and delayed CIT in receiving that portion of its payment attributable to the amount it received from the proceeds of the sale of the Galey goods.

Further, in *Westside*, the proceeds from the sale of the balance of the reclaiming seller's goods that were sold at the foreclosure sale to other purchasers were not considered "traceable proceeds" even though sufficient funds to pay that amount remained after the secured creditor was paid in full. The reclaiming seller was only awarded the proceeds that were specifically traceable to the goods purchased by the reclaiming seller. Such tracing is not present here.

■ In summary, in the context of a secured creditor that qualifies as a good faith purchaser, the value of the reclaiming seller's reclamation claim will depend on whether the goods or the proceeds from those goods have been used to satisfy the secured creditor's claim. Once the goods or the proceeds from the sale of those goods have been "paid" to the secured creditor, the reclaiming seller's claim in those goods is valued at zero, regardless of whether the secured creditor is ultimately paid in full and its lien is released as to other collateral. This conclusion is consistent with the reasoning of the *Pester* and *Westside* courts. In *Pester*, the reclaiming

seller recovered the value of its claim because as part of the plan of reorganization, the secured creditor released its claim on the goods sought to be reclaimed. 964 F.2d at 848. The *Pester* court recognized that "if the [plan of reorganization] in fact satisfied the claims of [the secured creditors] with the [goods sought to be reclaimed], or their proceeds, then [the reclamation claimant's] right to reclaim would be valueless." *Id.* In *Westside,* the court found that to the extent that the reclaiming seller was able to trace the proceeds of the sale of its goods, by its own purchase of those goods, and those proceeds were not used to satisfy the claim of the secured creditor, the reclaiming seller had a reclamation claim in the amount of the traceable proceeds. 732 F.2d at 1263.

Finally, because this Court finds that Galey is not entitled to an administrative claim or replacement lien inasmuch as any right to reclamation it might have was subject to CIT's security interest and was rendered valueless by CIT's interest, it is unnecessary for the Court to reach the issue of whether Galey otherwise complied with all the requirements for a right to reclamation.

## CONCLUSION

CIT, as the holder of a perfected security interest in substantially all Arley's assets including accounts receivable and inventory, is a good faith purchaser for value. Galey's interest as a reclaiming seller in the goods it sold Arley is subject to CIT's rights as a good faith purchaser.

Galey's reclamation claim was rendered valueless because the proceeds from the disposition of the Galey goods were used to pay CIT's secured claim. Therefore, the value of any right Galey has to an administrative claim or replacement lien, pursuant to § 546, is zero.

Galey does not have a secured claim and therefore it cannot seek the application of a marshaling remedy. Further, as a claimant seeking relief pursuant to U.C.C. § 2–702, Galey may not compel the appli-

cation of marshaling against CIT, a party that qualifies as a good faith purchaser. Moreover, even if a remedy similar to marshaling were applicable, it would have been precluded under the facts of this case because CIT would have suffered inconvenience and delay had it been prevented from seeking the proceeds attributable to the Galey goods.

The Trustee is to settle an Order consistent with this Memorandum Decision.