**In re DAIRY MART CONVENIENCE STORES, INC., et al., Debtors.**

**No. 01–42400(AJG).**

United States Bankruptcy Court, S.D. New York.

Jan. 3, 2003.

Dennis F. Dunne, Douglas W. Henkin, Lena Mandel, Susheel Kirpalani, Milbank, Tweed, Hadley & McCloy LLP, Ira S. Dizengoff, Akin, Gump, Strauss, Hauer & Feld, LLP, New York City, for Debtor.

Julienne K. Goldfine, Robert Joel Feinstein, Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., Paul Kenan Schwartzberg, Office of the United States Trustee, New York City, for Trustees.

## ORDER GRANTING MOTION TO RECLASSIFY CERTAIN CLAIMS AS GENERAL UNSECURED CLAIMS

ARTHUR J. GONZALEZ, Bankruptcy Judge.

On September 24, 2001, Dairy Mart Convenience Stores, Inc. ("Dairy Mart") and substantially all of its subsidiaries (collectively, the "Debtors") filed petitions for relief under title 11 of the United States Code (the "Bankruptcy Code"). Pre-petition, Dairy Mart, as borrower, together with a group of banks, whose agent was Citizens Bank (collectively, "Citizens"), as lenders, were party to a revolving credit agreement, dated December 28, 1999, as amended (the "Credit Agreement"). Except for Dairy Mart, the other Debtors guaranteed the amounts owing under the Credit Agreement. As of the Petition Date, the aggregate outstanding principal indebtedness under the pre-petition Credit Agreement, including letters of credit was approximately $30 million (the "Pre–Petition Obligations"). Pursuant to the Credit Agreement, Citizens was granted a lien on certain of the Debtors' property, including inventory, which comprised Citizens' cash collateral. Post-petition, the Debtors and Citizens entered into a stipulation for the use of cash collateral. An interim order permitting such use was signed on September 28, 2001, with subsequent interim orders signed on October 11, 2001 and October 16, 2001 (collectively, the "Interim Cash Collateral Order"). Under the Inter-

im Cash Collateral Order, as adequate protection, Citizens was granted replacement liens on all of the pre-petition collateral and the proceeds thereof, and all of the types of property that constitute pre-petition collateral coming into existence after the filing of the petition. Therefore, all cash in which Citizens had an interest, with all proceeds of the pre-petition collateral and all substitutions therefor, proceeds and replacements thereof and additions thereto, constituted Citizens asserted cash collateral.

The Debtors filed a motion, dated September 24, 2001, seeking entry of an order approving a post-petition secured facility (the "DIP Facility") to be provided by Foothill Capital Corporation ("Foothill"). In addition to other security provided to Foothill, the DIP Facility is secured by a first priority lien on and security interest in all property of the Debtor subject and subordinate to, among other things, valid and perfected liens and security interests of Citizens in the pre-petition collateral. The Court approved the DIP Facility in an interim order signed on September 25, 2001 and a final order signed on October 17, 2001. The final order approving the DIP Facility also approved the use of a portion of the proceeds of the DIP Facility to repay Citizens in full for the pre-petition indebtedness, except for letters of credit outstanding under the Credit Agreement which were transferred to and deemed issued under the DIP Facility. The final order approving the DIP Facility further provided that contemporaneous with the payment in full of all amounts outstanding under the pre-petition Credit Agreement, and the transfer of the letters of credit, the Debtors would "obtain from [Citizens] an immediate and complete release of the pre-petition liens and security interests securing the Pre–Petition Obligations."

On October 23, 2001, the Court entered an Order, *inter alia*, Establishing Procedures for Treatment of Valid Reclamation Claims (the "Reclamation Order"). The Reclamation Order provided that "any reclamation claim allowed ... shall be treated as an administrative claim, but only to the extent of the value of the right of reclamation ..." On July 24, 2002, the Debtors filed the Second Omnibus Objection of Dairy Mart Convenience Stores, Inc. to Certain Claims, pursuant to Fed. R. Bankr.P. 3007 (the "Second Omnibus Objection to Claims"). Included in the claims to which the Debtors objected were certain claims for which the claimants had asserted priority classification alleging that they were reclamation claims. The particular reclamation claims currently in issue (the "Reclamation Claims") to which the Debtors objected and for which they sought reclassification as general unsecured claims were those asserted by Pepsi Cola Bottling Co.-Portsmouth, Pepsi Cola Bottling Co.-Lexington (together with Pepsi Cola Bottling Co.-Portsmouth, "Pepsi Cola Bottling"), Central Investment Corporation ("CIC"), Sysco Food Services Cleveland ("Sysco") and Marathon Ashland Petroleum LLC ("Marathon" and collectively with Pepsi Cola Bottling, CIC and Sysco, the "Reclamation Claimants").

Opposition to that portion of the Second Omnibus Objection to Claims which sought to reclassify their Reclamation Claims as general unsecured claims was filed by CIC in a Response, dated August 22, 2002; by Sysco, in a response, dated August 23, 2002; and by Pepsi Cola Bottling, in a response, dated August 23, 2002.

While most of the claims objected to in the Second Omnibus Objection to Claims were disallowed by the Order, dated August 28, 2002, the Order adjourned consideration of the balance of the claims, including the Reclamation Claims pending a

further hearing. On October 4, 2002, the Debtors filed a Memorandum of Law in Support of Dairy Mart's Second Omnibus Objection to Claims with Respect to Certain Continued Matters (the "Continued Objection"). In addition, the Debtors filed an affidavit of Gregg R. Budoi, dated October 4, 2002, in support of the Continued Objection. Marathon filed a Preliminary Response, dated October 14, 2002, and an additional Response, dated October 29, 2002, to the Debtors' Second Omnibus Objection to Claims. On November 5, 2002, Pepsi Cola Bottling and CIC filed a Joint Response to the Continued Objection. Also on November 5, 2002, **Sysco filed a Supplemental Response to the issues raised in the Continued Objection.** A hearing regarding the Reclamation Claims was held on November 6, 2002.

Pre-petition, the Reclamation Claimants had delivered merchandise to the Debtors. Upon learning of the Debtors' bankruptcy filing, the Reclamation Claimants demanded reclamation of the items they, respectively, had delivered in the ten-day period prior to the filing. Sysco made its reclamation demand on September 28, 2001, CIC on October 2, 2001, and Marathon on September 26, 2001. Pepsi Cola Bottling Co.-Portsmouth and Pepsi Cola Bottling Co.-Lexington, each made reclamation demands, dated September 25, 2001 and September 24, 2001, respectively.

The Debtors maintain that because the Reclamation Claims were subject to the interest of a holder of a prior perfected, "floating lien" on the Debtors' inventory, when that lienholders interest was paid, the interests of the respective Reclamation Claimants were rendered valueless. As such, the Debtors contend that the Reclamation Claimants are not entitled to an administrative expense priority. For the purpose of reclassifying the Reclamation Claims as general unsecured claims, the Debtors assume that the other requirements for reclamation have been met, however, they reserved their right to dispute that such is the case.

The Reclamation Claimants argue that when they made their demand for reclamation, the Debtors still had the goods and as the prior lienholder's claim was paid from another source—the debtor-in-possession financing—the Reclamation Claimants contend that the Reclamation Claims are viable and they are entitled to an administrative expense priority pursuant to 11 U.S.C. § 546(c).

The parties acknowledge that the purpose of 11 U.S.C. § 546(c) [1] is to recognize any right to reclamation that a seller may have under applicable nonbankruptcy law. Section 546(c) does not create a new, independent right to reclamation but merely affords the seller an opportunity, with certain limitations, to avail itself of any reclamation right it may have under

---

1. 11 U.S.C. § 546(c) provides:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—

(A) before 10 days after receipt of such goods by the debtor; or
(B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
(B) secures such claim by a lien.

nonbankruptcy law. *Galey & Lord, Inc. v. Arley Corp. (In re Arlco, Inc.)*, 239 B.R. 261, 267 (Bankr.S.D.N.Y.1999); *In re Victory Markets Inc.*, 212 B.R. 738, 741 (Bankr.N.D.N.Y.1997); *Toshiba America, Inc. v. Video King of Illinois, Inc. (In re Video King of Illinois, Inc.)*, 100 B.R. 1008, 1013 (Bankr.N.D.Ill.1989). Pursuant to § 546(c), a seller may reclaim goods it has sold to an insolvent debtor if it establishes:

(1) that it has a statutory or common law right to reclaim the goods;

(2) that the goods were sold in the ordinary course of the seller's business;

(3) that the debtor was insolvent at the time the goods were received; and

(4) that it made a written demand for reclamation within the statutory time limit after the debtor received the goods.

*Victory Markets*, 212 B.R. at 741. The reclaiming seller has the burden of establishing each element of § 546(c) by a preponderance of the evidence. *Victory Markets*, 212 B.R. at 741.

Uniform Commercial Code ("U.C.C.") § 2–702,[2] as enacted in various jurisdictions, ordinarily forms the statutory right upon which sellers base their reclamation demand. Thus, the reclaiming seller must establish the requirements of the relevant U.C.C. section and remains subject to its limitations.

**2.** UCC § 2–702 entitled Seller's Remedies on Discovery of Buyer's Insolvency provides in relevant part:

\* \* \* \* \* \*

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt .... Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

 Once the right to reclamation is established, § 546(c) affords the bankruptcy court broad discretion to substitute an administrative claim or lien in place of the right to reclaim. *Pester*, 964 F.2d at 845. This discretion gives the court needed flexibility and permits it to recognize the reclaiming creditor's rights while allowing the debtor the opportunity to retain the goods in order to facilitate the reorganization effort. *Id.* However, this flexibility does not enable the Court to alter the value of the claim. That is, the alternatives of an administrative claim or a lien allow the Court to preserve the value the reclamation claimant is entitled to but if, under applicable nonbankruptcy law, the value of the reclamation claim is "zero," § 546(c) does not permit the Court to enhance the reclamation claimant's position to receive value that may not be otherwise available under applicable nonbankruptcy law.

 Pursuant to U.C.C. § 2–702(3),[3] the seller's right to reclamation is "subject to" the rights of a good faith purchaser from the buyer. *Arlco, Inc.*, 239 B.R. at 267 (citing cases). A holder of a prior perfected, floating lien on inventory is treated as a good faith purchaser with rights superior to those of a reclaiming seller. *Id.* at 267–68 (citing cases). The parties acknowledge that Citizens held such a lien and, therefore, qualifies as a good faith purchaser for value.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this Article (Section 2–403). Successful reclamation of goods excludes all other remedies with respect to them.

**3.** For convenience, references to U.C.C. sections will not cite any particular state numbering system but, rather, reference the equivalent Model Uniform Commercial Code section number.

■ While, the right to reclamation is subordinate to that of a good faith purchaser, it is not automatically extinguished, but rather, it is "relegated to some less commanding station." *Leeds*, 141 B.R. at 268; *Pester*, 964 F.2d at 846. While the reclaiming seller's claim is not automatically extinguished, the reclaiming seller is also not automatically granted an administrative claim or lien in the full amount sought when it is subject to the rights of the good faith purchaser. *Victory Markets*, 212 B.R. at 743. Rather, the reclaiming seller's right to reclaim depends on the value of the excess goods remaining once the secured creditor's claim is paid or released. *Id.*

■ The reclaiming seller is only entitled to receive what it would have received outside of the bankruptcy context after the superior claim was paid. *Pester*, 964 F.2d at 847; *Leeds*, 141 B.R. at 269; *Blinn*, 164 B.R. at 448; *Victory Markets*, 212 B.R. at 744. Thus, it is only when the reclaiming seller's goods or traceable proceeds from those goods are in excess of the value of the superior claimant's claim that the reclaiming seller will be allowed either to reclaim the goods or receive an administrative claim or lien in an amount equal to the goods that remain after the superior claim has been paid. *Victory Markets*, 212 B.R. at 744 (*citing Pester* 964 F.2d at 847); *United States v. Westside Bank*, 732 F.2d 1258, 1263 (5th Cir.1984). The payment on the reclamation claim must derive from the goods sold by the reclaiming creditor. When goods subject to a reclamation demand are liquidated and the proceeds used to pay the secured creditor's claim, the reclaiming seller's subordinated right is rendered valueless. *Arlco, Inc.*, 239 B.R. at 273. Once the secured creditor is paid in full, the reclaiming seller is only entitled to reclamation when the surplus collateral remaining con-sists of the very goods sold by the reclaiming seller or the traceable proceeds from those goods.

■ Allowing the reclaiming seller to recover only that to which it would be entitled absent the bankruptcy is in keeping with the purpose § 546(c) which is to preserve any common law or statutory rights to reclamation, not to enhance those rights. *Victory Markets*, 212 B.R. at 741 (*citing*, H.R. No. 595, 95th Cong., 1st Sess. 371–372 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6327–28); *Video King*, 100 B.R. at 1016–17; *Leeds*, 141 B.R. at 269. It therefore follows that any administrative claim or lien substituted for the right to reclamation pursuant to § 546(c) should be "allowed only to the extent of the value of the lost right of reclamation." *Video King*, 100 B.R. at 1016. If the right to reclamation would be worthless absent the bankruptcy filing, it is also worthless in bankruptcy. *Leeds*, 141 B.R. at 269. Indeed, granting an administrative claim or lien when the secured creditors have paid their claims out of the goods to be reclaimed "would afford the reclamation seller something it does not have under the UCC—a priority interest in the buyer's assets other than the goods to be reclaimed." *Pester*, 964 F.2d at 847.

■ As the bankruptcy filing does not enhance the reclaiming seller's rights, the Court should determine what would have happened to the reclaiming seller's claim in a nonbankruptcy context. Pursuant to state law the secured creditor would have the option of proceeding against any of its collateral. This Court has previously found that marshaling of proceeds is not permissible in this context because of the prejudice that would result to the senior creditor by the imposed delay, added cost, or inconvenience in collecting on its claim when it has a more readily available method to collect the amount owed. *Arlco*,

*Inc.,* 239 B.R. at 274–76. Therefore, a secured creditor may choose to foreclose on the goods sold by a reclaiming seller if these goods can be readily liquidated. When the secured claim, or a portion of it, is paid out of the goods sought to be reclaimed, the right to reclaim is rendered valueless. *Pester,* 964 F.2d at 847. Thus, "in the non-bankruptcy context, the secured creditor's decision with respect to its security interest in the goods will determine the value of the seller's right to reclaim." *Pester,* 964 F.2d at 847.

■ In the case before this Court, Citizens could have sought Court approval to foreclose on all its collateral, including the goods of the Reclamation Claimants, immediately. However, Citizens consented to the Debtor's continued use of the collateral in its business pending the approval of a debtor-in-possession financing arrangement at which time Citizens was to be paid in full following the release of its collateral. Therefore, in order to determine whether any goods—or traceable proceeds therefrom—remain, the Court must consider whether the disposition of that collateral was applied to the payment of Citizen's loan.

Whatever reclamation goods may have been present on the date of the demand or the proceeds of the sale of those items—all of which was subject to Citizen's rights—were used to satisfy Citizens' secured claim. Citizens had a prior floating lien on all of the pre-petition inventory and any proceeds derived from that inventory. In the Cash Collateral Order, Citizens was afforded replacement liens on all of the pre-petition collateral and the proceeds thereof, as well as all of the types of property that constitute pre-petition collateral coming into existence after the filing of the petition. Therefore, all proceeds of the pre-petition collateral, substitutions therefor, proceeds and replacements there-

of, and additions thereto, constituted Citizens cash collateral. Citizens had a lien on the cash proceeds whether the cash proceeds were swept up by Citizens and deposited in their bank account and used to pay down Citizens loan on an ongoing basis or whether the cash proceeds were swept up by Foothill and deposited in Foothill's bank account. If the latter were the case, Citizens had a lien on those proceeds while it was in Foothill's bank account until all of the Debtors Pre–Petition Obligations to Citizens was paid in full. Thus, by the time that Citizens was paid in full on October 31, 2001 from the DIP Facility, because marshaling is not permissible in this context, and because the inventory was liquidated and the proceeds were either swept directly by Citizens as a paydown or swept by Foothill with Citizens lien attaching to such proceeds in Foothill's possession, the Reclamation Claims were rendered valueless.

Moreover, the only way the Debtors could get a post-petition loan was if they afforded the debtor-in-possession lender a lien on all the pre-petition lender's collateral. In effect, that was the disposition of the collateral—the lien was given to the new lender in exchange for payment to Citizens or in effect "sold" to the new lender. The transaction of releasing Citizens lien and simultaneously granting the lien to the post-petition lender, Foothill, must be viewed as an integrated transaction. Foothill took a lien on everything for the purpose of securing its loan. There was a direct nexus between the release of the liens on the pre-petition collateral and the payment on the pre-petition secured loan. To agree to provide the post-petition revolving credit funding, which funding, in part, was used to pay Citizens' loan, Foothill, as the post-petition lender, required that a lien be placed on the very same pre-petition inventory and its proceeds that

had secured Citizen's loan, as well as any additional post-petition inventory. These steps must be treated as an integrated transaction because, otherwise, financing of debtors-in-possession would be impeded as post-petition lenders would be disinclined to lend on a smaller collateral base than that afforded the pre-petition creditor.

Thus, at the time that Citizens secured claim was paid on October 31, 2001, all of the goods or proceeds of those goods were disposed of to "pay" Citizens secured claim. In this context, the reclamation goods or the proceeds from those goods have been used to satisfy the secured creditor's claim. As such the goods or their proceeds have effectively been "paid" to the secured creditor, and the Reclamation Claims in those goods is valued at zero.

To the extent that the Citizens loan was paid down from the proceeds of the sale of the reclamation goods by cash sweeps directly to Citizens prior to receipt of the payment by Foothill, it is clear that the proceeds were used to pay the prior floating lienholders claim. To the extent that Citizens was not paid from the proceeds of the sale of reclamation goods by cash swept up to Citizens prior to the payment from Foothill, this case is distinguishable from the *Pester* case where as part of the plan of reorganization, the secured creditor released its claim on the goods sought to be reclaimed, 964 F.2d at 848. This is because in *Pester*, the source for the payment of the previous lienholder's claim did not have a direct connection to the previous lien. In the instant case, the post-petition lender's lien was directly connected with the previous lender's lien because the post-petition lender only lent with the understanding that it was taking over that position. Thus, Citizen's claim was in fact satisfied with the goods currently sought to be reclaimed, or their proceeds with Citizen's lien attached thereto. Therefore, the Reclamation Claims were rendered valueless.

## CONCLUSION

The Reclamation Claimants' interest as reclaiming sellers in the goods sold to the Debtors was subject to Citizen's rights as a good faith purchaser.

The Reclamation Claims were rendered valueless because the proceeds from the disposition of the reclamation goods were used to satisfy Citizen's secured claim. Therefore, the value of any right the Reclamation Claimant's have to an administrative claim or replacement lien, pursuant to § 546, is zero. Based upon the foregoing, it is hereby

Ordered, that the Debtors' Second Omnibus Objection to Claims as it relates to the Reclamation Claims is sustained; and it is further

Ordered, that the Reclamation Claims are reclassified as general unsecured claims.