**In re PRIMARY HEALTH SYSTEMS, INC., et al., Debtors.**

**Allegiance Healthcare Corporation, Plaintiff,**

v.

**Primary Health Systems, Inc., Phs Mt. Sinai and Primary Health Systems of Ohio L.P., Defendants.**

**Bankruptcy Nos. 99–615 (MFW) through 99–622(MFW) and 98–2623(MFW). Adversary No. 99–554(MFW).**

United States Bankruptcy Court, D. Delaware.

Jan. 26, 2001.

Brendan Shannon, Matthew P. Denn, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, James P. Ricciardi, Gibson Dunn & Crutcher, LLP, New York City, for Defendants.

Michael D. DeBaecke, Blank Rome Comisky & McCauley, Wilmington, DE, Sherri B. Lazear, Baker & Hostetler LLP, Columbus, OH, for Plaintiff Allegiance Healthcare Corporation.

Reginald W. Jackson, Vorys Sater Seymour & Pease, LLP, Columbus, OH, Neil B. Glassman, Michael L. Vild, Elio Battista, the Bayard Firm, Wilmington, DE, for the Official Committee of Unsecured Creditors.

Daniel K. Astin, Office of the United States Trustee, Philadelphia, PA.

### OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Debtors' Motion for summary judgment to disallow the Plaintiff's reclamation claim as a secured or administrative claim pursuant to section 546(c)(2). Because we conclude that there is a disputed issue of material fact, we deny the motion for summary judgment.

### I. FACTUAL BACKGROUND

In September, 1996, Primary Health Systems, Inc., and its affiliates ("the Debtors") obtained an $80 million loan from First Union Bank ("First Union"). Under that agreement, the Debtors pledged all of their current and future inventory as collateral for the loan. First Union timely perfected its security interest in the inventory.[2]

On March 8, 1999, Allegiance Healthcare Corporation ("Allegiance") sold $271,847.20 of medical supplies on credit to the Debtors. On March 17, 1999, the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code. On March 22, 1999, Allegiance made a timely written demand for return of its goods pursuant to section 2–702 of the Uniform Commercial Code ("the UCC") and section 546(c) of the Bankruptcy Code. When the Debtors did not return the goods, Allegiance commenced an adversary proceeding in which it sought (1) an accounting of all Allegiance goods in the Debtors' possession as of the date of its reclamation demand, (2) the reclamation of those goods, and (3) either a replacement lien or an administrative claim.

The Debtors filed a Motion for summary judgment asserting that Allegiance is not entitled to a secured or an administrative claim under section 546(c) because First Union's floating lien on the inventory exceeds the value of that inventory and is prior to any reclamation right that Allegiance has in that inventory. Allegiance asserts that, while its reclamation right may be subject to First Union's lien, it is not extinguished by that lien. Therefore, it asserts that the Court must grant it a replacement lien or administrative priority for its claim pursuant to section 546(c).

---

**1.** This Opinion constitutes the conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

**2.** Subsequent to filing, the Debtors obtained post-petition financing from First Union, pursuant to which First Union received a first lien in the Debtors' inventory.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O).

## III. DISCUSSION

### A. Section 546(c)

■ Section 546(c)[3] of the Bankruptcy Code constitutes the sole remedy for a creditor who seeks reclamation from a bankrupt debtor. *Flav–O Rich, Inc. v. Rawson Food Serv. (In re Rawson Food Serv.)*, 846 F.2d 1343, 1346 (11th Cir.1988); *In re Victory Markets, Inc.*, 212 B.R. 738, 741 (Bankr.N.D.N.Y.1997); *In re Dynamic Tech. Corp.*, 106 B.R. 994, 1004 (Bankr. D.Minn.1989); *Toshiba America, Inc. v. Video King of Illinois, Inc. (In re Video King of Illinois, Inc.)*, 100 B.R. 1008, 1013 (Bankr.N.D.Ill.1989). Section 546(c) does not create an independent right of reclamation. Rather, it permits an exception to the trustee's strong arm powers, if the seller has a right of reclamation under state law. *See, e.g., Video King*, 100 B.R. at 1013; *Galey & Lord Inc. v. Arley Corp. (In re Arlco, Inc. and HFO, Inc.)*, 239 B.R. 261, 266 (Bankr.S.D.N.Y.1999). The reclaiming seller has the burden of establishing each element of section 546(c) by a preponderance of the evidence. *Victory Markets*, 212 B.R. at 741.

The right of a selling creditor to reclamation of goods is codified, in most states,[4] in Section 2–702 of the UCC which provides, in relevant part:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten-day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay. (3) The right of the seller to reclaim under subsection (b) is subject to the rights of a buyer in ordinary course or other good faith purchaser under this division [U.C.C. § 2–403]. Successful reclamation of goods excludes all other remedies with respect to them.

■ It is well-established that, absent a showing of bad faith, a creditor with a prior perfected security interest in inventory which contains an after-acquired property clause is a good faith purchaser under the UCC. *See, e.g., In re Samuels & Co.*, 526 F.2d 1238, 1241–42 (5th Cir. 1976) (en banc); *In re Affiliated of Florida, Inc.*, 237 B.R. 495, 497 (Bankr.M.D.Fla. 1998); *Mitsubishi Consumer Elec. America, Inc. v. Steinberg's Inc. (In re Stein-*

**3.** Section 546(c) provides:

The rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—
(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—
(A) before 10 days after receipt of such goods by the debtor; or
(B) if such 10-day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—
(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or
(B) secures such claim by a lien.
11 U.S.C. § 546(c).

**4.** The Debtors assert, and Allegiance does not contest, that three states' laws could apply to this case, Pennsylvania, Illinois, or Ohio. All three states' have enacted virtually identical versions of section 2–702 of the UCC. *Compare* 13 Pa. Con. Stat. § 2702 *with* 810 Ill. Comp. Stat. § 5/2–702 *and* Ohio Rev.Code § 1302.76.

*berg's, Inc.*), 226 B.R. 8, 10 (Bankr. S.D.Ohio 1998); *Sandoz Pharm. Corp. v. Blinn Wholesale Drug Co. (In re Blinn Wholesale Drug Co.)*, 164 B.R. 440, 443 (Bankr.E.D.N.Y.1994); *In re Roberts Hardware Co.*, 103 B.R. 396, 398–99 (Bankr.N.D.N.Y.1988). Allegiance has not made any allegation of bad faith.

The Debtors assert that Allegiance is not entitled to a secured or administrative claim because First Union's floating lien exceeds the value of the inventory. Therefore, they assert that Allegiance's reclamation rights are either extinguished or valued at zero. In contrast, Allegiance asserts that its claim is entitled to administrative or secured status because its rights are only "subject to" the rights of First Union, not extinguished.

The majority of cases support the Debtors' position. *See, e.g., Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.)*, 964 F.2d 842, 847 (8th Cir.1992); *Affiliated of Florida, Inc.*, 237 B.R. at 502; *In re Leeds Building Products, Inc.*, 141 B.R. 265, 269 (Bankr.N.D.Ga.1992); *Dynamic Tech. Corp.*, 106 B.R. at 1003–1004; *Video King*, 100 B.R. at 1016–17; *Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.)*, 62 B.R. 315 (Bankr.E.D.N.C.1986); *In re Flagstaff Foodservice Corp.*, 14 B.R. 462, 467 (Bankr.S.D.N.Y.1981).

There are, however, cases which support Allegiance's position. *See, e.g., Isaly Klondike Co. v. Sunstate Dairy & Food Products Co. (In re Sunstate Dairy & Food Products Co.)*, 145 B.R. 341, 343 (Bankr.M.D.Fla.1992); *American Saw & Mfg. Co. v. Bosler Supply Group (Bosler Supply Group )*, 74 B.R. 250 (N.D.Ill.1987). The number of cases which favor each position is not dispositive; rather, the reasoning of the Courts is.

In *Sunstate* and *Bosler,* the fact patterns are similar: the debtors' inventories were both fully secured by floating liens when the vendors sold goods to the Debtors on credit shortly before bankruptcy. *See Sunstate,* 145 B.R. at 343–44; *Bosler,* 74 B.R. at 251–52. Most of those goods which were still in the debtor's possession as of the petition date, and the sellers timely sought reclamation. *Id.*

In *Sunstate,* the Court found that the seller's right to reclamation was limited because the secured creditor, which had a floating lien on the inventory, qualified as a good faith purchaser. 145 B.R. at 344. The Court stated that under section 2–702, the seller's right is not "extinguished by" but only "subject to" the secured creditor's lien. In the absence of bankruptcy, the seller could have pursued a reclamation action in state court and regained possession of the goods, although they would have remained subject to the superior lien. The Court held that section 546(c)(2) provides that a seller may be denied reclamation of its goods "only if the Bankruptcy Court grants the reclaiming seller an administrative expense priority or secures the reclaiming seller's claim by a lien." *Id.* at 345. Because the debtor's property was fully secured by the bank lien, the Court concluded that granting the reclaiming creditor a secured claim would be a "hollow victory unless marshaling or equitable subordination is available." *Id.* at 346. Consequently, the Court concluded that granting the seller an administrative claim was "appropriate." *Id.*

Similarly, in *Bosler,* the Court concluded that under section 2–702(3) of the UCC, the rights of the seller are "subject to," not extinguished by, the existence of a secured creditor. 74 B.R. at 251. The Court found "nothing in the statute that indicates that the reclaiming seller loses his state-created [reclamation] right entirely simply because the secured creditor holds a right which is senior to his." *Id.* at 253. Even where the floating lien exceeded the value of the collateral, the Court found that the seller's right to reclamation was not extinguished, though its ability to exercise that right was. *Id.* at 254. Therefore, the Court ordered that the seller either be given a lien or its claim be given an administrative priority. *Id.*

**116**

■ In contrast to the *Sunstate* and *Bosler* decisions, the cases cited by the Debtors hold that, even where a seller has a reclamation right, if the value of the floating lien exceeds the value of the inventory, the seller's reclamation right is valueless [5] and, therefore, the seller is not entitled to an administrative claim or lien under section 546(c)(2).

In *Leeds*, eight creditors filed motions for reclamation where there was a preexisting floating lien against the inventory including the goods sought to be reclaimed. 141 B.R. at 266. The Court concluded that section 2–702 of the UCC renders a seller's right to reclamation subordinate to the rights of a perfected afteracquired security interest in inventory. *Id.* at 268. The Court acknowledged that "subordinate" does not mean "extinguished." Rather, "the effect of the language is to relegate the seller to some less commanding station." *Id.* Ultimately, the Court determined that no administrative or secured claim was warranted because outside bankruptcy those sellers' reclamation claims were without value and unenforceable. *Id.* at 268–69 (*quoting FCX*, 62 B.R. at 322; *Video King*, 100 B.R. at 1017).

The Court in *Video King* employed a two-step process: first, the creditor must establish the existence of a reclamation right under state law, and second, that right must be valued. The necessity for the second step was explained as follows:

> If ... the reclamation rights of [the reclaiming creditors] would be valueless outside of bankruptcy because the goods in question for whatever reason would go first to satisfy the Bank's claim, those

rights are equally valueless in the bankruptcy context, and the claimants would be entitled to no administrative claim or lien for the denial of the chance to exercise this valueless right. Section 546(c) is one of those provisions of the Bankruptcy Code that seeks to give recognition to nonbankruptcy entitlements.... It is not intended to enhance such nonbankruptcy entitlements or to give value to rights which had no value outside of the bankruptcy context. Compensating [the reclaiming creditors] for a valueless reclamation right is, in effect, to distribute the same goods twice. On the one hand, the goods are given to the bank on account of its prior rights (if proven). On the other hand, the goods (or the value of the goods from other property of the estate) are given to the seller in recognition of its right of reclamation.

Such a result is untenable. One or the other alone can succeed. Either the Bank is entitled to the goods or the seller's right of reclamation has value. In either case, the loser is left with nothing more than a nonpriority unsecured claim with respect to the value of the goods in question sold and delivered to the debtor by [the reclaiming creditors] and subject to whatever rights of reclamation either may establish. This is exactly what the loser in this dispute would have gotten in a nonbankruptcy context. [FN11]

> [FN11] Of course, it is not necessarily all or nothing. If the proof indicates that [the reclaiming creditors] would have recovered some, but not all of the goods delivered to the debtor in a

---

5. At least two cases are cited for the proposition that, where the floating lien on inventory exceeds the value of the inventory, the seller's reclamation rights are "extinguished." *See, e.g., Collingwood Grain, Inc. v. Coast Trading Co.* (*In re Coast Trading Co.*), 744 F.2d 686 (9th Cir.1984); *Shattuc Cable Corp.*, 138 B.R. 557, 562 (Bankr.N.D.Ill.1992), *overruled by In re Reliable Drug Stores, Inc.*, 70 F.3d 948 (7th Cir.1995). Those cases are distinguishable and do not, in fact, hold that the liens are

extinguished. We agree with the Court in *Pester Refining* which concluded that "[i]n the UCC context, when the right to reclaim is 'subject to' the rights of secured creditors, that means the right is subordinate or inferior to the security interests, not that it is automatically and totally extinguished. *See Toyota Ind. Trucks U.S.A., Inc. v. Citizens Nat'l Bank,* 611 F.2d 465, 473 & n. 6 (3d Cir.1979)." 964 F.2d at 846.

nonbankruptcy § 2–702 reclamation action with the balance going to the Bank, that is exactly what will happen in these proceedings economically. In addition, the Bank's rights, if any, to prevent reclamation are, in turn, subject to whatever rights the trustee may establish vis a vis the Bank in this or any other proceeding.

*Video King,* 100 B.R. at 1017 (citations omitted).

The Court in *Victory Markets* used a similar analysis and concluded:

If the seller's right to reclaim is worthless because the superior secured creditor's claim exceeds the value of the goods, the seller's request to reclaim is not denied by the court but rather is of no value, and therefore the remedies of an administrative priority claim or lien under Code § 546(c)(2) are unavailable to the seller.

212 B.R. at 743. *See also Pester Refining,* 964 F.2d at 847 ("[T]he bankruptcy court does not 'deny reclamation' in recognizing that the reclamation right no longer has value; therefore, the alternative remedies of Code § 546(c)(2) do not come into play"); *Bindley,* 181 B.R. at 379 (granting reclamation creditor an administrative claim but allowing the claim at zero); *Blinn,* 164 B.R. at 449 (finding that, even if reclamation creditor were granted an administrative or secured claim, it would be valued at zero).

This two-step process stands in stark contrast to the approach of *Sunstate* and *Bosler,* which stop their analysis after the first step. In those cases, the courts find that reclamation sellers are entitled to an administrative or secured claim under section 546(c)(2) regardless of the value of their claims.

 We agree with the analysis of the cases cited by the Debtors. Section 546(c) was not intended to grant any additional rights to creditors. Under state law, a reclaiming seller would not have been able to reclaim its goods if the goods were not worth more than the value of the floating lien, because the holder of the first lien would have asserted its rights and been entitled to all of the inventory. Therefore, such a creditor, although it has a right of reclamation, has no right to a secured or administrative claim in bankruptcy because its right of reclamation is valueless. Permitting such a creditor (whose claim outside of bankruptcy is nothing more than a general unsecured claim) to elevate its claim to administrative or secured status in bankruptcy would give it a windfall.

There is another basis for our conclusion. Even if Allegiance were entitled to a lien on the inventory pursuant to section 546(c), the Debtor could have stripped that lien pursuant to section 506(a) & (d) because (after considering the superior lien of First Union), there would be no equity in the inventory on which the reclamation creditor's lien could attach. *See Harmon v. United States,* 101 F.3d 574, 582 (8th Cir.1996) ("the weight of authority suggests that lien-stripping is permissible in Chapter 11").

The Court in *FCX* adopted a similar analysis in concluding that a reclamation creditor's rights are cut off where the floating lien exceeds the value of the goods in question.

If the Uniform Commercial Code, rather than giving a right to reclaim, instead gave the seller a junior lien on the property sold, the seller's lien in bankruptcy would only exist to the extent that the value of the prior lienholder's collateral exceeded the amount of the prior lienholder's claim. If the amount of the prior lienholder's security interest exceeded the value of the security, the seller's lien would have no value. The rights of a reclaiming seller under U.C.C. § 2–702 ... have a lower status than that of a junior lien creditor and consequently a reclaiming seller's rights have no value if the floating lien, to which those rights are inferior, exceeds the value of the lienholder's collateral.

In those circumstances, the lienholder's rights would be "cut off."

62 B.R. at 323.

Thus, we conclude that where a secured creditor has a floating lien on all of a debtor's inventory and its claim exceeds the value of the inventory, a creditor's reclamation right is valueless and the reclamation creditor is not entitled to receive an administrative or secured claim under section 546(c)(2).

### B. *Issue of Disputed Fact*

■ Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Robeson Indus. Corp. v. Hartford Accident & Indemnity Co. (In re Robeson Indus. Corp.)*, 178 F.3d 160, 164 (3d Cir.1999). Motions for summary judgment may be supported by affidavits attesting to facts that the affiant is competent to testify to and that are admissible. The party opposing summary judgment may submit opposing affidavits. *See, e.g.,* Fed.R.Civ.P. 56(e), incorporated by reference by Fed. R.Bankr.P. 7056. Where a motion for summary judgment is supported by affidavits, the party opposing the motion may not rest upon mere allegations or denials in its pleadings but must, by affidavit, set forth specific facts showing that there is a genuine issue for trial. *Id.*

In this case, the Debtors submitted an Appendix in support of their motion for summary judgment which included various First Union loan documents and an affidavit of their Chief Executive Officer, P. Michael Autry, dated July 20, 2000. That affidavit states (in the present tense) that "[t]he amount of First Union's lien exceeds the value of all goods in the debtors' possession." This Affidavit was dated July 20, 2000, sixteen months after the reclamation demand.

Although we conclude that the Debtors are correct in their analysis of section 546(c), we are unable to grant their motion

for summary judgment because we conclude that there is a disputed issue of material fact: namely, whether First Union's claim exceeded the value of the inventory at the time the reclamation demand was made. *See, e.g., Video King*, 100 B.R. at 1014 (concluding that the rights of the reclaiming creditor must be determined at the time the reclamation demand is made). Significantly, in the intervening sixteen months, the Debtors have liquidated almost all of their assets. The Affidavit is insufficient to support a finding that the First Union claim exceeded the value of the Debtors' inventory at the time of the reclamation demand. Thus, although Allegiance has not submitted a counter-affidavit, the Debtors' affidavit is insufficient to support its motion for summary judgment.

### C. *Collateral estoppel*

■ The Debtors also argue that the final DIP financing Order collaterally estops Allegiance from asserting its entitlement to an administrative or secured claim. They note that, in the final DIP financing order, the Court made a finding that First Union held a senior lien on all assets of the Debtors.

That Order is not inconsistent with the assertions of Allegiance. Allegiance concedes that First Union's lien on inventory is superior to its rights as a reclamation creditor pursuant to section 2–702 of the UCC. However, to the extent that First Union's claim does not exceed the value of the inventory, Allegiance asserts it is entitled to reclaim the inventory (or be granted an administrative or secured claim in the inventory or other assets). This is not inconsistent with the DIP Order.

Further, the DIP Order was entered on April 30, 1999, after Allegiance made its reclamation demand on March 22, 1999, and thus perfected any rights it had in the inventory. The DIP Order did not purport to decide at that time that Allegiance's claim was extinguished, only that First Union's lien was superior. It does

not collaterally estop Allegiance from pursuing its complaint.

## IV. CONCLUSION

For the foregoing reasons, we conclude that a reclamation claimant is not entitled to receive administrative or secured priority for its claim pursuant to section 546(c)(2) where the Debtors' inventory is subject to a floating lien which exceeds the value of the inventory. However, because there remains a question of fact whether the value of the inventory exceeded the value of First Union's lien as of the date that the reclamation demand was made, we cannot grant the Debtors' motion for summary judgment.