**In re HOULIHAN'S RESTAURANT, INC., Debtor.**

No. 02–40359.

United States Bankruptcy Court,
W.D. Missouri,
Kansas City Division.

Oct. 25, 2002.

Justice, King, Esq., Topeka, KS, for Movant.

Daniel J. Flanigan, Esq., Polsinelli Shalton & Welte PC, Kansas City, MO, Michaela C. Crocker, Esq., John E. Mitchell, Esq., Daniel C. Stewart, Esq., Vinson & Elkins, Dallas, TX, for Respondent.

*MEMORANDUM OPINION*

ARTHUR B. FEDERMAN, Chief Judge.

This is a Chapter 11 bankruptcy case. Creditor Steve Connelly Seafood Co., Inc. (Connelly) filed a motion for recognition of

its right of reclamation and for the allowance of an administrative expense claim in the amount of $47,945.60. Fleet National Bank, as the Agent for the prepetition and postpetition secured lenders, (the Agent) objected to Connelly's motion. In its objection the Agent argued that it is an undersecured floating lien creditor, that Connelly's reclamation rights are subordinate to the claims of the Agent, and that, therefore, Connelly's reclamation rights have no value. The parties now ask this Court to value Connelly's reclamation claim. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### FACTUAL BACKGROUND

The basic facts are not in dispute. Connelly supplied fresh seafood to Houlihan's. On January 23, 2002, Houlihan's filed a Chapter 11 bankruptcy petition. On January 31, 2002, Connelly served a timely reclamation demand, in the amount of $47,945.60, upon Houlihan's counsel.[1] On August 26, 2002, after some preliminary skirmishing, Connelly filed a motion asking this court to recognize its right of reclamation and to allow it an administrative expense in lieu of reclamation in kind.[2] Both Houlihan's and the Agent objected to the

allowance of an administrative expense, arguing that Connelly's claim is subordinate to the secured claim of the Agent.

### DISCUSSION

The right of reclamation involves an interplay of state and bankruptcy law. I begin with the version of the Uniform Commercial Code (the UCC) adopted by the State of Missouri. Section 400.2–702(2) of Missouri's Revised Statutes provides that a seller may reclaim goods from a buyer if the seller discovers within ten days of delivery that the buyer is insolvent:

> (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt. . . .[3]

This right is not absolute, however, because section 400.2–702(3) subjects the right to the claims of a lien creditor:

> (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in the ordinary course or other good faith purchaser or lien creditor under this article.[4]

According to the official comment to the UCC, lien creditor as used in section 2–702(3) has the same meaning as in section 9–301(3).[5] The UCC defines a lien creditor as a "creditor that has acquired a lien on the property involved by attachment, levy, or the like."[6] Connelly does not dispute that the Agent is a lien creditor and that its claim is undersecured. Houlihan's

---

1. By agreement of the parties, no evidence has yet been offered as to the amount, if any, of Connelly's product that remained in Houlihan's possession at the time Connelly made its reclamation demand. In view of this ruling, no evidence need be offered on that issue.

2. Doc. # 741.

3. Mo. St. Ann. § 400.2–702(2) (1994).

4. *Id.* at § 400.2–702(3).

5. UCC Comment, § 2–702, ¶ 3. I note that Revised Article 9's definition of "lien creditor" is found at 400.9–102(52).

6. Mo. Stat. Ann. § 400.9–102(57)(A) (Supp. 2002).

First Amended and Restated Disclosure Statement states that Houlihan's owned assets valued at $46,645,000 on December 30, 2001, and of $44,934,000 on June 30, 2002. The Agent filed a proof of claim in this bankruptcy case in the amount of $75,440,727.54, asserting a secured claim in all of Houlihan's inventory, including after acquired property. No one has objected to this proof of claim. Moreover, Houlihan's confirmed Plan of Reorganization[7] provides for the Agent to retain "all Liens currently in existence securing the obligations of Debtors under the Amended and Restated Credit Agreement dated April 17, 2001."[8]

Section 546(c) of the Bankruptcy Code (the Code) both recognizes a seller's state-law right to reclaim goods, and gives the bankruptcy court the power to provide for alternative remedies:[9]

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10–day period expires after the commencement of the case,

before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court-

(A) grants the claim of such a seller priority as a claim of a kind specified in section 503(b) of this title; or

(B) secures such claim by a lien.[10]

There is no question that Connelly satisfied the statutory prerequisites for reclamation required by section 546(c). It is undisputed that Connelly delivered goods to Houlihan's within 10 days of the Chapter 11 filing, and that it made a demand, in writing, within 10 days of receipt of the goods. Section 546(c) proposes to satisfy the claim by either allowing the seller to reclaim the goods in a debtor's possession on the date of the demand, or by granting an administrative claim or substitute lien for the value of the goods in the debtor's possession on the date of the demand. Since Connelly no longer wishes to repossess the fresh seafood delivered to Houlihan's, it asked this Court to value its administrative expense claim. Section 503(b) of the Code provides for reimbursement, as an administrative expense, of costs incurred to preserve the estate:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate . . . [11]

---

**7.** *See* Doc. ## 819, 824, and 837.

**8.** Doc. # 680, First Amended and Restated Plan of Reorganization, ¶ 5.1.2.

**9.** *See Pester Refining Co. v. Ethyl Corp. (In re Pester Refining Co.),* 964 F.2d 842, 845 (8th Cir.1992).

**10.** 11 U.S.C. § 546(c).

**11.** 11 U.S.C. § 503(b).

The retention and use by a Chapter 11 debtor of goods subject to reclamation serves to preserve the estate.

 Section 546(c), however, limits a seller's reclamation rights in bankruptcy to whatever rights exist under state law.[12] And the UCC provides that the right to reclaim is subordinate to the rights of lien creditors.[13] As the Eighth Circuit explained in *Pester Refining*, the presence of a lien creditor does not extinguish a seller's reclamation rights; it only subordinates them to whatever rights the lien creditor possesses.[14] Thus, the issue is whether Connelly's subordinated right of reclamation has any value. The following example is useful. If the seller exercised its state law right to reclaim and was given goods subject to the claims of a secured creditor, the seller would have to pay the secured creditor the value of its lien before obtaining possession.[15] Alternatively, if the buyer files for bankruptcy relief, and the seller is not allowed to reclaim the goods, the seller must be given a comparable remedy in the form of either an administrative expense claim or a substitute lien. But the administrative expense claim or the substitute lien can only be paid from the residual value of the goods after payment of the secured claim collateralized by the goods.[16] In other words, if the lien creditor is oversecured, a seller's reclamation right might have some value. If, on the other hand, the lien creditor is undersecured, and the entire value of the goods would be required to satisfy the secured creditor's lien, then the seller's administrative expense claim, or substitute lien, has no value, and it should not be allowed.[17] Thus, the result in bankruptcy mirrors the result under state law. As the bankruptcy court explained in *In re Primary Health Systems, Inc.*,[18] Congress did not intend to grant additional rights to sellers when it drafted section 546(c).[19] Under state law a reclaiming seller's right to reclaim would be valueless if the goods were worth less that the value of a floating lien. If the remedy under state law has no value, than the substitute remedy afforded by the Code would, likewise, have no value.[20]

 I, therefore, find that, as of January 31, 2002, the Agent held a floating lien on all of Houlihan's inventory, that the value of that floating lien was greater than the value of Houlihan's inventory, and that Connelly's administrative expense claim has no value and should be denied. Connelly should, instead, be treated as an unsecured creditor pursuant to the terms of the confirmed Plan of Reorganization.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

12. *See* 11 U.S.C. § 546(c).

13. Mo. Stat. Ann. § 400.2–702(3)(1994)

14. 964 F.2d at 846.

15. **5 Collier on Bankruptcy** ¶ 546.04[2][a] at 546–32 (Lawrence P. King, ed., 15th ed. rev. 2002).

16. *Id.*

17. *Id.*

18. 258 B.R. 111 (Bankr.D.Del.2001).

19. *Id.* at 117.

20. *Id.*