**In re GEORGETOWN STEEL COMPANY, LLC, Debtor.**

No. C/A 03–13156–W.

United States Bankruptcy Court, D. South Carolina.

Sept. 13, 2004.

___

Michael M. Beal, Lead Attorney, Columbia, SC, for Debtor.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

This matter comes before the Court upon the Motion filed by Georgetown Steel Company, LLC, as debtor-in-possession in the above-captioned Chapter 11 case (the "Debtor"), seeking entry of an order classifying reclamation claims as general unsecured claims or in the alternative valuing reclamation claims (the "Motion") and the objections to the Motion filed by Progress Rail Services Corporation ("Progress"), Heraeus Electro–Nite Co. ("Haraeus"), and Foseco Metallurgical, Inc. ("Foseco") (collectively, the "Reclamation Creditors").[1] After having considered the record of the case and the arguments of counsel, the Court makes the following findings of fact and conclusions of law:[2]

### FINDINGS OF FACT

1.  On October 21, 2003, (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Debtor is acting as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.[3]

2.  Debtor owned a steel mill located in Georgetown, South Carolina which produces carbon steel wire rods.

3.  Debtor entered into a Financing Agreement with The CIT Group/Business Credit Inc. ("CIT") dated July 10, 2002, pursuant to which CIT made certain loans on a revolving basis up to the maximum amount of $40,000,000.00 (as amended and modified from time to time, the "CIT Loan"), secured by a lien and security interest in substantially all of Debtor's assets, including inventory. On the Petition Date, the outstanding principal balance of the CIT Loan was approximately $26,260,000.[4] MidCoast Industries, LLC ("MidCoast") has a mortgage on Debtor's real property to secure loans made to Debtor in the approximate total amount of $5,850,000.00. MidCoast also has a lien and security interest in substantially all of Debtor's assets, including inventory.

4.  The balance owed to CIT at the time of the sale of Debtor's assets in June 2004 was approximately $2,500,000.00, and Mid-Coast was owed approximately $5,850,000.00. The sale of Debtor's assets, including the goods subject to reclamation, was approved at a cash price of $18,000,000.00. CIT has been paid in full from the sale of Debtor's assets. The amount owed to MidCoast remains in dispute, however, funds representing the full amount of MidCoast's lien has been reserved. After payment of all senior secured creditors, significant funds remain for distribution to administrative priority and unsecured creditors.

5.  Pursuant to a motion filed by Debtor on the Petition Date, this Court entered an Order on October 24, 2003 under 11 U.S.C. §§ 105(a), 503(b), 546(c) and 546(g)(A) Establishing Procedure for the Treatment of

---

1.  Although there are other parties with reclamation claims listed on Debtor's Reclamation Report of November 21, 2003, this Order addresses the claims of Progress, Heraeus, and Foseco, the three Reclamation Creditors who appeared in response to the Motion. Collectively, their claims will be referred to as "Reclamation Claims."

2.  The Court notes that to the extent one of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

3.  Further reference to the Bankruptcy Code (11 U.S.C. § 101 *et seq.*) will be by section number only.

4.  As to the date of this Order, the claim of CIT has been satisfied and its claim has been withdrawn.

Valid Reclamation Claims and (B) Prohibiting Third Parties from Interfering with Delivery of the Debtor's Goods (the "Reclamation Order"). Pursuant to the Reclamation Order, Debtor was required to file a report listing the reclamation claims that Debtor believed to be valid (the "Reclamation Report").

6. The Reclamation Order provided, in relevant part, that:

All reclamation claims allowed by the Court pursuant to the above-described report will be deemed an administrative expense claim in accordance with section 546(c) of the Bankruptcy Code.

Further, the Reclamation Creditors were enjoined from seeking to reclaim, or interfering with the delivery of goods to or by Debtor.

7. Debtor filed the Reclamation Report on November 21, 2003. The Reclamation Report set forth the amount of goods in possession of Debtor as of the date of the reclamation demand by nine (9) different vendors. While the Reclamation Report provided that Debtor would make available all unconsumed materials as shown on the Reclamation Report to the respective claimants who demonstrated to the Court they had paid to CIT and/or MidCoast the value of their liens prior to obtaining possession, no reference was made in the Reclamation Order regarding the reclassification or valuation of the administrative claims contemplated therein, or to any required payment of CIT's or MidCoast's liens by the Reclaiming Creditors.

8. Consent Orders were entered by this Court following a hearing held on June 8, 2004, regarding the Reclamation Report. Both Consent Orders were entered by the parties following the filing of Debtor's Motion to value the Reclamation Claims. The Consent Orders were agreed upon, in part to facilitate the sale of Debtor's assets, in order to establish the amount of reclamation claims. Pursuant to these Orders, Progress Rail was deemed to have a valid reclamation claim in the amount of $80,000.00 and Heraeus and Foseco were deemed to have valid reclamation claims in the amounts of $74,089.93 and $21,875.00 respectively.

9. The parties have stipulated that Heraeus, Foseco, and Progress Rail have met all of the statutory elements required to hold a valid reclamation claim under § 546 and the amount of those claims.

## SUMMARY OF ARGUMENT

Debtor argues that the Reclamation Claims should be classified as general unsecured claims or, in the alternative, that the Reclamation Claims should be valued at zero. The crux of Debtor's argument is that 11 U.S.C. § 546(c) gives reclaiming creditors no greater rights than that pursuant to state law, and that an analysis of state law establishes that the Reclamation Claims should be valued at zero, primarily because of the existence of the secured claims of CIT and MidCoast as of the petition date. Debtor contends that outside of bankruptcy, the Reclamation Claims would be valueless if the goods were worth less than the value of the floating liens of the senior secured creditors because state law in effect subordinates the Reclamation Claims to the rights of such secured creditors. Debtor also asserts that the Reclamation Creditors would not have been entitled to reclaim their goods unless their specific goods or proceeds remained after the secured creditors had been paid in full. However, Debtor has conceded that tracing during the sales process by the Reclamation Creditors would have delayed the sale to the detriment of the estate. Debtor further argues that although both CIT and MidCoast have liens on collateral other than inventory, marshalling is inapplica-

ble and cannot be asserted in order to give the Reclamation Creditors greater rights than unsecured creditors. Finally, Debtor asserts that its position is not contrary to the relief granted in the Reclamation Order.

The Reclaiming Creditors seek administrative claims in the amount of $80,000.00 for Progress, $74,089.93 for Heraeus, and $21,875.00 for Foseco. The Reclaiming Creditors first argue that the October 24, 2003 Reclamation Order explicitly provided that allowed reclamation claims would be deemed administrative expense claims and that they were assured that if the reclaimed goods were identified, each claimant would be afforded an administrative expense priority. They contend that they were prejudiced by the prohibition in the Reclamation Order against their taking any action to protect their rights, and had they known at the relevant points in time about Debtor's intention to seek a valuation of their administrative claims they could have acted sooner to oppose the sale of their goods or at least segregate and trace the goods and their proceeds. Second, the Reclamation Creditors argue the effect of the existence of CIT and Mid-Coast's liens. The Reclamation Creditors concede that their right to reclaim is "subject to" the rights of those secured creditors but argue that they are entitled to a reclamation claim to the extent that the senior secured creditors have been paid in full. The Reclamation Creditors argue that under certain circumstances after the secured creditors' superior interests have been satisfied or released, a reclaiming seller may be entitled to an administrative expense claim or lien as an alternative to reclamation. The Reclamation Creditors contend that this case turns on a factual scenario that is not present in the cases relied upon by Debtor—the claims of the senior lienholders have been fully satisfied in a liquidating Chapter 11 from the sale of

assets, including the goods for which Debtor stipulated were subject to the Reclamation Creditors' valid reclamation claims, and there remain funds available for distribution.

## CONCLUSIONS OF LAW

■ 11 U.S.C. § 546(c) governs the rights of a reclaiming seller under the Bankruptcy Code. Section 546(c) provides as follows, in relevant part:

(c) Except as provided in subsection (d) of this section, the rights and powers of a trustee under *sections 544(a), 545, 547,* and *549* of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods—

(A) before 10 days after receipt of such goods by the debtor; or

(B) if such 10–day period expires after the commencement of the case, before 20 days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in *section 503(b)* of this title; or

(B) secures such claim by a lien.

The reclaiming seller bears the burden of proof pursuant to § 546(c). *Yenkin–Majestic Paint Corp. v. Wheeling–Pittsburgh Steel Corp. (In re Pittsburgh–Canfield Corp.),* 309 B.R. 277, 284 (6th Cir. BAP 2004). The statutory right from which reclaiming sellers base their reclamation

demand is Uniform Commercial Code § 2–702. As enacted in South Carolina, the seller's right to reclamation is "subject to" the rights of a good faith purchaser or lien creditor:

> (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.
>
> (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this chapter (*§ 36–2–403*). Successful reclamation of goods excludes all other remedies with respect to them.

S.C.Code Ann. § 36–2–702 (Law. Co-op.2003 rev.).[5] Debtor concedes that the Reclamation Creditors have claims in an amount set forth in their Reclamation Report filed with the Court.[6] Further, the Reclamation Creditors do not dispute that, pursuant to § 36–2–702, their right to reclaim is "subject to" the rights of CIT and MidCoast as secured creditors. Instead, the parties' dispute centers upon the value of their claims vis-à-vis Debtor's secured creditors.

Although the factual circumstances of this case appear distinguishable from the reclamation cases cited by the parties, the Court will nevertheless address the current status of the case law inasmuch as courts have split on the proper application of § 546(c), and this issue is one of first impression for this Court.

One line of cases, hereinafter referred to as the plain language cases, holds that as long as a reclaiming seller meets the statutory prerequisites of § 546(c) and has a statutory or common law right to reclaim, then the seller must receive either an administrative expense priority or replacement lien. These cases so hold even in instances where there is a lien creditor or good faith purchaser with a superior interest. *See, e.g., Isaly Klondike Co. v. Sunstate Dairy & Food Prod. Co. (In re Sunstate Dairy & Food Prod. Co.)*, 145 B.R. 341 (Bankr.M.D.Fla.1992); *In re Diversified Food Serv. Dist.*, 130 B.R. 427 (Bankr.S.D.N.Y.1991); *In re Roberts Hardware*, 103 B.R. 396 (Bankr.N.D.N.Y. 1988). Where a lien creditor or good faith purchaser does have a superior interest, these courts recognize that the right to reclaim is not extinguished, but is nonetheless subordinate. Since the reclaiming seller cannot reclaim its goods due to its subordinated status, then these courts deny reclamation but grant the reclaiming seller one of the two alternative remedies set forth in § 546(c)(2)—administrative claim or lien. The reasoning of this line of cases appears consistent with the plain

---

**5.** Section 546(c) provides that the rights and powers of a trustee's avoiding powers pursuant to §§ 544(a), 545, 547, and 549 are subject to a seller's reclamation rights. Section 546(c) "immunizes state-created rights of reclamation from certain of the trustee's avoiding powers, thereby helping to preserve and protect reclamation in bankruptcy ...." *See* David G. Epstein et al., *Bankruptcy* § 6–64, at 144 (West 1992). Accordingly, Debtor is not

asserting any rights as a hypothetical lien creditor or bona fide purchaser. Instead, Debtor is arguing the existence of a good faith purchaser—CIT and MidCoast—pursuant to S.C.Code § 36–2–702(3).

**6.** With the exception of Progress Rail, whose claim for purposes of this Motion is stipulated as $80,000.

language of the statute. Nowhere in § 546(c) does the statute require a valuation be performed once the right to reclaim is denied and the requirements for an administrative claim or lien are otherwise met, and the "subject to" language of the commercial code is honored by the denial of a reclaiming seller's reclamation right where its claim is subordinate.[7]

A second line of cases, hereinafter referred to as the valuation cases, holds that the value of a reclamation claim, vis-à-vis secured creditors, must be considered as of the petition date before granting a reclaiming seller one of the § 546(c)(2) remedies. Under this approach, if there are senior secured creditors with a floating lien as of the petition date, a reclaiming creditor may not recover its goods and any request for an administrative claim or alternate lien must be denied. These courts generally focus on the secured creditors' rights to control the disposition of the goods, noting that under state law a seller's right to reclaim may be valueless if the goods were worth less than the value of a floating lien because the goods are first subject to the claims of those secured creditors. *Pittsburgh–Canfield*, 309 B.R. at 288 (citations omitted). Many of these courts reason that "the reclaiming seller is entitled to a lien or administrative expense claim only to the extent that the value of the *specific* inventory in which the reclaiming seller asserts an interest exceeds the amount of the floating lien in the debtor's inventory." *Id.* at 287.

This line of cases argues that its theory is also consistent with the plain language of the statute, because the valuation analysis determines whether there exists a "right to reclaim," and if the right does not exist, then the Court need not grant an

administrative claim or replacement lien, and reconciles the language of the statute by holding that the "right to reclaim" should be recognized as valueless. *See, e.g. Yenkin–Majestic Paint Corp. v. Wheeling–Pittsburgh Steel Corp. (In re Pittsburgh–Canfield Corp.),* 309 B.R. 277, 284 (6th Cir. BAP 2004); *In re Arlco, Inc.,* 239 B.R. 261 (Bankr.S.D.N.Y.1999); *Pillsbury Co. v. FCX, Inc. (In re FCX, Inc.),* 62 B.R. 315 (Bankr.E.D.N.C.1986).

While the circumstances existing in this case may not require a choice between these lines of authority, it is nevertheless helpful to examine the reasoning of the "valuation" cases. In *Pittsburgh–Canfield,* all of the goods subject to reclamation were sold and the proceeds were applied toward the secured obligations under a debtor-in-possession credit facility. *Id.* at 283. Debtor and its affiliates were apparently operating at that time, and Debtor was authorized to continue to use inventory of the reclaiming sellers in its ongoing business practices. The reclaiming sellers argued, among other things, that since the secured creditors were otherwise oversecured, their claim could be paid from other assets of the estate. The court overruled the reclaiming sellers argument by noting that no one seller's goods were at any time of sufficient value to pay the secured creditors in full, and that the reclamation right only extends to the particular goods—if the goods were used to satisfy the secured creditor's claims, then typically under state law there would be no right to reclaim. *Id.* at 287–88. *See also Allegiance Healthcare Corp. v. Primary Health Systems, Inc. (In re Primary Health Systems, Inc.),* 258 B.R. 111, 117 (Bankr.D.Del.2001) ("under state law, a reclaiming seller would not have been able to reclaim its goods if the

7. As previously noted, Debtor does not dispute that the Reclamation Creditors met the statutory prerequisites pursuant to § 546(c).

goods were not worth more than the value of the floating lien because the holder of the first lien could have asserted its rights and been entitled to all of the inventory."). Nevertheless, the court recognized that a seller's reclamation claim may have some value under state law in the case of an oversecured creditor where there is a residual value of goods after payment in full of the secured claim if the actual goods or its traceable proceeds remained. *Id.* at 287–88 (citations omitted).

In *In re Arlco, Inc.*, the court considered a seller's right to reclamation "subject to" the rights of a secured creditor. 239 B.R. 261 (Bankr.S.D.N.Y.1999). Although the court recognized that the existence of a secured creditor with a floating lien does not automatically extinguish a seller's right of reclamation, the court found that the value of the reclaiming seller's claim will depend on whether the goods or proceeds *have been used to satisfy* the secured creditor's claim. *Id.* at 276 (emphasis added). In *Arlco,* there remained a balance due to the secured creditor following sale of the reclaiming seller's inventory. The court found the reclamation claim valueless as the proceeds from the sale of the goods of the reclaiming seller were used to pay towards the secured creditor's claim.[8] *See also In re Dairy Mart Convenience Stores, Inc.,* 302 B.R. 128 (Bankr.S.D.N.Y.2003) (secured creditor paid from proceeds of debtor-in-possession credit facility and all inventory liquidated to pay secured credi-

tor's lien, thus reclamation claims were rendered valueless).

However, two cases often cited within this line of authority and which fall more closely in line with the circumstances of this case delineate some further exceptions to the approach. In *In re Phar–Mor, Inc.,* the court found that since the debtor's prepetition secured lenders were paid in full through a postpetition debtor-in-possession facility, and not from the sale of the subject goods, their liens were released and the right to reclaim was not affected by the secured creditors.[9] 301 B.R. 482 (Bankr.N.D.Ohio 2003). Similarly, in *In re Pester Refining Co.,* 964 F.2d 842 (8th Cir.1992), the secured creditors released their claims in the goods subject to reclamation via the debtor's plan of reorganization. Accordingly, the secured creditors' claims having been satisfied, it was proper to grant the reclaiming sellers a priority claim in the full amount of the invoice price. *Id.* at 848. In *Pester* and *Phar–Mor,* the courts noted that it is often the actions of the secured creditor that determine the rights of the reclaiming seller:

> In priority terms, the reclaiming seller stands behind the insolvent buyer's secured creditors who have security interests in the goods subject to reclamation demands. Accordingly, if the buyer's secured creditor releases its security interest in the goods to be reclaimed, the seller may enforce its right to reclaim.

8. The court in *Arlco* also rejected the argument made by the reclaiming sellers that it should be granted relief based upon a marshaling theory inasmuch as the secured creditor's interest was to ultimately be satisfied through the continued liquidation of remaining collateral. 239 B.R. at 273, 276–77. The court found that marshaling was inappropriate because the reclaiming seller was not a secured creditor, which the court found was a prerequisite for such relief. *Id.* The Court need not address this argument as it is not the

factual scenario present in this case. The Reclamation Creditors need not rely on any future disposition inasmuch as the senior secured creditors have now been paid in full and all assets have been sold.

9. The court in *Phar–Mor* also found that the DIP lenders could not qualify as good faith purchasers as they had notice of the reclamation demands upon the granting of a security interest to them.

*In the bankruptcy context, the secured creditor's decision determines the value of the seller's right to reclaim.*

Phar–Mor, 301 B.R. at 496–97 (emphasis added). See also Pester Refining, 964 F.2d at 848.

Similar to the circumstances set forth in Phar–Mor and Pester, in the case presently before the Court, the secured creditors have been paid in full or otherwise appear to have released their claim to the Reclamation Creditors' goods through their lack of objection—or implied consent—to the relief sought by the Reclaiming Creditors.[10]

Rather than presuming that a senior secured creditor would always assert its rights in a reclaiming creditor's goods as the valuation cases seem to do, in this case no senior secured creditor objected to the relief sought by the Reclamation Creditors and at the time of the sale of Debtor's assets, including inventory, excess funds remained for distribution.[11] In effect, the secured creditors in the matter before the Court are not choosing to satisfy their liens from the reclaimed goods. In *American Saw & Mfg. Co. v. Bosler Supply Group (In re Bosler)*, 74 B.R. 250 (N.D.Ill. 1987), the court declined to "value" a reclaiming seller's claim where the secured creditor had been paid in full from the sale of assets and the seller's goods and thus did not involve the competing interests of the reclaiming seller and secured creditor, but rather the propriety of granting one of the § 546(c)(2) remedies.[12] Similarly, in the matter before the Court, the issue no longer involves the competing interests of the secured creditors and the Reclamation Creditors.

To the extent the holdings in Phar–Mor and Pester could be considered as requiring some sort of tracing in order to determine the existence of remaining proceeds or goods of the reclaiming sellers under circumstances similar to those that exist in this case, see, e.g., In re Pittsburgh–Canfield, 309 B.R. at 287–88; United States v. Westside Bank, 732 F.2d 1258 (5th Cir. 1984), Debtor's argument was not based upon the failure of tracing in this case and Debtor further conceded that at this stage of the proceedings it is impossible by either the Reclamation Creditors or Debtor. The Reclamation Creditors should not be prejudiced by any argument that their rights are somehow diminished because they cooperated with a sale of Debtor's assets which included their goods. See *Griffin Retreading Co. v. Oliver Rubber Co.*, 795 F.2d 676, 679 (8th Cir.1986) (sale of goods by Debtor should not be held to defeat right of reclamation where one exists).

---

**10.** CIT filed an objection to the Debtor's Reclamation Report in January 2004 asserting that "the valid Reclamation Claims should be classified as allowed administrative claims, and paid, not from CIT's cash collateral, but from Debtor's reorganization efforts, after the payment in full of CIT's secured claim." Accordingly, CIT's objection was not to the allowance of the administrative claim, but to the source of payment early in the case. Such assertion lends support to the Reclamation Creditors' argument, as discussed hereinafter, that the actions of Debtor may have prejudiced any ability they may have had to work out issues concerning their goods with the secured creditors at the relevant time. CIT's objection was withdrawn at the hearing on the matter. CIT has since been paid in full, and CIT did not file a pleading relating to the present Motion.

**11.** The Reclamation Creditors represented that their goods were included in the recent sale of Debtor's assets. Progress' reclamation claim for other raw materials is being determined by separate adversary proceeding, No. 03–80571, pending before this Court.

**12.** Apparently the secured creditor filed no objection as it had been paid in full.

Additionally, it appears that the actions of Debtor discouraged, if not foreclosed, the Reclamation Creditors from seeking a tracing, or segregation, of their goods prior to the sale of Debtor's assets. Debtor requested that the Court delay and even enjoin any determination of the Reclamation Claims until this point in time—a point in time in which the goods have now been sold and the secured creditors paid in full, with substantial proceeds remaining. Debtor proposed and received the primary relief requested in the Reclamation Order—that is to retain possession of the reclaimed goods to assist in its reorganization. Through a procedure and timetable it requested, Debtor has led the Court and the parties to the present posture of the case.

In addition, Debtor maintained it was in the best interests of the estate to sell without delay all of its assets including goods which were admittedly subject to the Reclamation Claims. Debtor proposed no specific allocation of sale proceeds, and did not suggest the Reclamation Creditors needed to further protect their interests beyond the plain terms of the Reclamation Order. The Motion to value the Reclamation Claims was filed *after* the time period for objecting to the sale of Debtor's assets had passed. Further, as will be discussed hereinafter, the Reclamation Creditors had been assured that they were entitled to administrative claims in the case and had been further enjoined by the Reclamation Order, as requested by Debtor, from pursuing their rights. It can be reasonably inferred that had they known of Debtor's intentions, the Reclamation Creditors would have been more active in tracing their goods to specific proceeds or in requiring segregation of their goods from the sale, particularly since Debtor's assets sold for a cash bid of $18,000,000, and only approximately $8,000,000 was needed to pay the senior secured creditors in full.

It can also be reasonably inferred that the senior secured creditors were satisfied to be paid from non-reclamation goods given their lack of objection to the administrative claims of the Reclamation Creditors. Due to the circumstances of this case, the Reclamation Creditors should not be prejudiced by their present inability to more specifically identify which proceeds of the sale of Debtor's total assets are attributable to their goods, when such an ability existed at the time of the sale, and ultimately since such tracing appeared futile when the secured creditors were to be fully satisfied and significant excess proceeds were to remain. Had it been presented that the Reclamation Creditor's goods were not necessary to the full payment of the secured creditors, this Court may well have allowed recovery of the goods at that time.

The Court also notes that not only are there no objections to the administrative claims from the secured creditors in this case, but the unsecured creditors' committee (the "Committee") also did not object. The Committee has been noticeably active, vigorously pursuing the interests of its constituents throughout this case, particularly with respect to the sale of Debtor's assets. Therefore, it is reasonable to assume that the unsecured creditors do not oppose the relief sought by the Reclamation Creditors.

Finally, the Reclamation Creditors formally argue as an additional ground for relief that the Reclamation Order has previously determined the present issue before the Court by specifically providing that a reclamation claim allowed by the Court "will be deemed an administrative expense claim in accordance with Section 546(c) of the Bankruptcy Code." Accordingly, they contend that the Reclamation Order placed no specific limitation on the

entitlement of the Reclamation Creditors to administrative claims through a valuation analysis, and thus the relief requested by Debtor in its Motion is contrary to the relief previously ordered. Debtor responds that allowance of the claims is tied to the Reclamation Report, and since the Reclamation Report reserved all rights of Debtor, they are entitled to now raise issues of valuation. Whether or not the Reclamation Order serves as a bar to Debtor's valuation efforts, the Court prefers to analyze the argument under the principles of an equitable estoppel theory.

■ In essence, equitable estoppel "arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." *Bakery and Confectionery Union v. Ralph's Grocery Co.*, 118 F.3d 1018 (4th Cir.1997) (citation omitted). The doctrine applies in the bankruptcy context when: (1) the party estopped knew the relevant facts; (2) the party estopped intended for its conduct to be acted or relied upon, or the party acting had the right to believe the conduct was so intended; (3) the party acting was ignorant of the true facts; and, (4) the party acting relied on the conduct to its injury. *First Union Comm'l Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enters., Inc.)*, 81 F.3d 1310, 1317 (4th Cir.1996). The elements of equitable estoppel cited in *Varat* are similar to those under South Carolina law. *In re Burris*, No. 01–00776, 2001 WL 1806982, at \*2

(Bankr.D.S.C. Aug. 31, 2001). The rule "is designed to protect any adversary who may be prejudiced by the attempted change of position." *In re Roof Doctor, Inc.*, No. 97–01648, 1998 WL 2016785, at \*4 (Bankr.D.S.C. Aug. 25, 1998) (quoting *Varat*, 81 F.3d at 1317).

■ While the Court does not believe Debtor or its counsel acted with an intent to deceive or mislead, the elements of equitable estoppel appear to be met in this case.[13] First, it was Debtor who made its motion to establish procedures for reclamation claims in its "first day" motions and proposed to the Court the injunctive relief entered by the Court in the Reclamation Order so Debtor could maintain possession of the goods. Debtor was in control of the relevant information concerning the reclamation claims at all times. Second, Debtor filed its motion to establish reclamation procedures early in the case and proposed a specific treatment of the Reclamation Claims. Debtor intended for such actions to be relied upon. Third, the Reclamation Creditors assert they were not aware that the granting of an administrative expense claim was conditioned upon valuation. The Reclamation Creditors relied upon the language in the Reclamation Order, and the Reclamation Report is inconsistent with the relief set forth in the Order.[14] Based on the language proposed by Debtor, and ultimately granted by the Reclamation Order, the Court finds the Reclaiming Creditors' reliance reasonable. Finally, the Reclaiming Creditors relied

13. The finding of facts related to the application of equitable estoppel should not be viewed as criticism of Debtor's counsel, as counsel exhibited a high level of professionalism and thoroughness in this case.

14. Debtor argues that, pursuant to the Reclamation Report, Debtor reserved its rights to raise issues regarding the priority of reclamation claims. The Reclamation Report contained a paragraph indicating that the recla-

mation claims were subject to the secured creditors' claims, but there is no reference in the Reclamation Report to any intention of Debtor to attempt to value the Reclamation Creditors' administrative claims at zero, and noticeably absent is any reference to Debtor's intention to value these claims at zero even under the present scenario wherein senior secured creditors are paid in full.

upon the relief granted in the Reclamation Order. They did not pursue any course of conduct that may have been available to them to obtain possession of the reclaimed goods because they were assured by the Order that if their goods were identified under § 546(c) and a claim allowed, each would be afforded administrative expense priority.

Additionally, the October 24, 2003 Reclamation Order placed no limitation on entitlement to an administrative claim, and the Reclamation Creditors appear to have relied upon such representation. *See Pester*, 964 F.2d at 848 (even though reclamation claim is subject to superior secured creditor's interest, parties should be cognizant of ability of secured creditors in non-bankruptcy context to relinquish all or part of their security interest). Accordingly, as an additional ground, the Court finds that the elements of equitable estoppel are met in this case, and Debtor is estopped from contesting the validity of the Reclaiming Creditors' administrative expense claims.[15] *See In re Globe Metallurgical, Inc.*, 312 B.R. 34 (Bankr.S.D.N.Y.2004) (debtor estopped from contesting administrative expense claim of utilities, where utilities were assured by initial utility order that post-petition charges would have administrative expense priority); *Bethlehem Steel Corp. v. BP Energy Co. et al. (In re Beth-*

*lehem Steel Corp.)*, 291 B.R. 260 (Bankr. S.D.N.Y.2003) (motion by debtor indicating that continued utility service was essential to reorganization, and subsequent order indicating utilities would have administrative expense claims on same basis as prepetition, estopped Debtor from arguing against payment as represented).

In sum, under the circumstances present in this Chapter 11 liquidating case,[16] the Court sees no reason to deviate from the language of § 546(c). The most recent pronouncement from the United States Supreme Court regarding statutory interpretation dictates that where a statute provides a "plain, nonabsurd meaning," the Court is to enforce a statute according to its plain terms. *Lamie v. United States Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 1030–32, 157 L.Ed.2d 1024 (2004). In the matter before the Court, the view of the Reclamation Creditors does not appear to deviate from the language of the Bankruptcy Code or the Uniform Commercial Code. The parties provided the Court with no controlling state law that would indicate that granting the Reclamation Creditors their rights pursuant to § 546 in an instance where and at a time when senior secured creditors have actually been fully satisfied is contrary to S.C.Code § 36–2–702. The Court has considered that the right of reclamation is "subject to" the

---

**15.** The doctrine of judicial estoppel may also be applicable in this case. The following factors are required: (1) the party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding and the position sought to be estopped must be one of fact rather than law or legal theory; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage. *Shadow Factory Films Ltd. v. Swilley (In re Swilley)*, 295 B.R. 839, 850 (Bankr.D.S.C.2003) (citing *1000 Friends v. Browner*, 265 F.3d 216, 226 (4th Cir.2001)).

Additionally, traditional principles of waiver may apply, *see Varat*, 81 F.3d at 1317 (waiver applies in the bankruptcy context), as well as res judicata, collateral estoppel and/or laches. However, since the elements of equitable estoppel appear to be met in this case, the Court need not address these additional grounds for relief.

**16.** This case being a non-operating, liquidating Chapter 11, the necessity of the use of the Reclamation Creditors' goods to preserve the estate is not as apparent with a non-operating entity.

rights of a good faith purchaser or lien creditor per S.C.Code § 36–2–702–but in this case, the senior secured creditors have been paid in full, and neither they nor the Committee asserted an objection to the relief sought by the Reclaiming Creditors. Based upon the language of the statute, and in the absence of any controlling precedent or state law that indicates otherwise, the Reclamation Creditors should be entitled to that which § 546(c)(2) provides.[17]

Accordingly, the Reclamation Creditors have met their burden of proving their entitlement to administrative expense claims based on the facts of this case. Debtor's Motion is denied.

**AND IT IS SO ORDERED.**

**17.** However, in making this determination the Court is not formally adopting a position that follows the line of cases that use a plain language approach versus those that value a reclaiming seller's right to reclaim.